■ In the Matter of JOHN DOE, Appellant, v SKIDMORE COLLEGE, Respondent. [59 NYS3d 509]—

Garry, J.P. Appeal from a judgment of the Supreme Court (Nolan Jr., J.), entered June 1, 2016 in Saratoga County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent, among other things, finding petitioner guilty of violating respondent's Sexual and Gender-Based Misconduct Policy.

In January 2014, petitioner and the complainant, both of whom were college students, spent several hours together in petitioner's dormitory room on respondent's campus. During this time, both parties agree that they lay down together on petitioner's bed, kissed, and took off some or all of their clothing, and that they had agreed in advance not to engage in sexual intercourse. In October 2015, petitioner received a formal complaint alleging that, in January 2014, he had committed misconduct against the complainant in violation of respondent's 2013-2014 Sexual and Gender-Based Misconduct Policy. An investigation followed, headed by respondent's Title IX deputy coordinator (hereinafter the deputy coordinator). Interviews were conducted with petitioner, the complainant and nine witnesses. Thereafter, the deputy coordinator provided petitioner and the complainant with an initial draft of the investigation report, to which they each submitted written responses. A second draft of the investigation report followed, adding a joint interview of the complainant and a tenth witness, and petitioner submitted a written response. The final investigation report was provided to petitioner and the complainant in December 2015. Several days later, they were each permitted to separately address the adjudication panel during a comment session. The panel thereafter found that petitioner had committed the charged violations and recommended the sanction of expulsion. Respondent expelled petitioner, and he filed an administrative appeal. The appeal panel agreed with one of petitioner's contentions—that the investigators had erred by interviewing the complainant and the tenth witness together—but determined that this error had not impacted the findings, and found no grounds upon which to reconsider the adjudication panel's findings.

Petitioner thereafter commenced the instant CPLR article 78 proceeding seeking to annul the findings and set aside his expulsion on the grounds, as pertinent here, that the adjudication panel's findings were arbitrary and capricious, that the findings and sanction were arrived at in violation of respondent's procedures, that those procedures violated the requirements of fundamental fairness, and that the penalty imposed was excessive. After joinder of issue, Supreme Court rejected petitioner's contentions and dismissed the petition. Petitioner appeals.

We first address petitioner's contentions that respondent's disciplinary process lacked fundamental fairness, was biased and did not comply with the Education Law.[1] Initially, we do not find that respondent erred in applying the standards of conduct that were in effect under its 2013-2014 policy, but using the procedures established by its 2015-2016 policy. Respondent's policy was revised after the underlying incident in compliance with a 2015 enactment commonly known as the Enough is Enough Law (L 2015, ch 76) that, among other things, required colleges to adopt the standard of affirmative consent as part of their codes of conduct pertaining to sexual activity, and established procedures for related disciplinary proceedings (see Education Law § 6441). It is undisputed that this affirmative consent standard, as set forth within the 2015-2016 policy, is more demanding than the effective consent requirement previously in effect. It was not irrational for respondent to apply the standard of conduct that was in effect at the time of the incident in determining whether there had been a violation, but to apply the procedural requirements established by statute and incorporated within the revised policy that was controlling at the time of the investigation. Petitioner contends that the split application of the two policies was confusing, but also concedes that he was advised of this procedure at the outset.

The record does not support petitioner's argument that the

---

**1.** To the extent that petitioner's arguments are raised for the first time upon appeal and are premised on newspaper articles—submitted with respondent's consent as addenda to petitioner's brief—that are not part of the administrative record, such arguments and submissions may not be considered in this CPLR article 78 proceeding (see Matter of Rizzo v New York State Div. of Hous. & Community Renewal, 6 NY3d 104, 110 [2005]; Matter of World Buddhist Ch'An Jing Ctr., Inc. v Schoeberl, 45 AD3d 947, 951 [2007]). Likewise, petitioner alleges that respondent violated its policies by failing to provide him with a transcript for use in this CPLR article 78 proceeding. As this claimed error took place after the conclusion of petitioner's administrative appeal and is not part of the administrative record, this Court may not consider it.

deputy coordinator who led the investigation was biased against him. Although the deputy coordinator had been involved in a previous disciplinary proceeding against petitioner, there is no requirement that an official may not participate in more than one disciplinary proceeding against the same student. The fact that the deputy coordinator made certain procedural determinations that were adverse to petitioner does not, without more, reveal bias (*see Matter of Weber v State Univ. of N.Y., Coll. at Cortland*, 150 AD3d 1429, 1434 [2017]).

We disagree with petitioner's contention that the 2015-2016 policy violated the Education Law and principles of fundamental fairness by eliminating a hearing requirement that had been part of the 2013-2014 policy. The Enough is Enough Law requires colleges to ensure that every student is afforded certain rights in proceedings involving accusations of sexual activity in violation of a college's code of conduct, including "an opportunity to offer evidence during an investigation, and to present evidence and testimony at a hearing, *where appropriate*" (Education Law § 6444 [5] [b] [ii] [emphasis added]). Contrary to petitioner's contention, this provision does not require colleges to offer hearings as part of their disciplinary procedures for such violations. Instead, as indicated by the qualified statutory language and further clarified by guidelines issued by the Education Department, the Enough is Enough Law requires colleges to provide students with an opportunity to offer evidence, but permits them to do so by a method other than a hearing, such as an investigatory process (*see* New York State Education Department, Complying with Education Law Article 129-B at 27 [2016]). Likewise, the Enough is Enough Law does not require a college to permit cross-examination of a complainant or a witness.[2] The right to cross-examine witnesses is limited in administrative proceedings (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d 980, 983 [2008], *appeal dismissed* 10 NY3d 950 [2008]). Here, the policy satisfied the statutory requirements by permitting an accused student to submit written questions to be answered by the complainant or any witness if deemed to be relevant and appropriate by the investigators (*see Matter of Weber v State Univ. of N.Y., Coll. at Cortland*, 150 AD3d at 1432). We find no violation of the Enough is Enough Law.

Petitioner's claims as to fundamental fairness are without

---

**2.** Although petitioner asserts that the procedures in the 2013-2014 policy should have been employed, that policy, like the 2015-2016 policy, did not permit cross-examination or direct questioning of a complainant by an accused student.

merit as respondent is not a public university. Thus, its relationship with its students "is essentially a private one such that, absent some showing of State involvement, [its] disciplinary proceedings do not implicate the 'full panoply of due process guarantees' " (*Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 994 [1999], quoting *Matter of Mu Ch. of Delta Kappa Epsilon v Colgate Univ.*, 176 AD2d 11, 13 [1992]; *see Matter of Kickertz v New York Univ.*, 25 NY3d 942, 944 [2015]).

Petitioner next contends that respondent failed to follow its own procedures in implementing the disciplinary process. Where, as here, no hearing is required by law, a court reviewing a private university's disciplinary determination must determine "whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious" (*Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d at 993; *accord Matter of Warner v Elmira Coll.*, 59 AD3d 909, 910 [2009]; *see Matter of Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 771 [2001], *lv denied* 96 NY2d 708 [2001]). The determination must be annulled only where there has been a lack of substantial compliance, or where the determination lacks a rational basis (*see Matter of Hyman v Cornell Univ.*, 82 AD3d 1309, 1310 [2011]). Perfect adherence to every procedural requirement is not necessary to demonstrate substantial compliance (*see e.g. Matter of Beilis v Albany Med. Coll. of Union Univ.*, 136 AD2d 42, 44 [1988]; *see also Ladenburg Thalmann & Co. Inc. v Signature Bank*, 128 AD3d 36, 43 [2015]). Nevertheless, we find that there were multiple failures that here, taken together, demonstrated a lack of substantial compliance.

Respondent's first such failure occurred at the outset of the investigation. Section XI of respondent's 2015-2016 policy provides that an accused student must be given notice through a "[f]ormal [c]omplaint," which must "includ[e] the date, time, location and *factual allegations* concerning a violation" [emphasis added].[3] The complaint provided to petitioner stated the date, time and location of the incident, but included no factual allegations identifying the specific actions that were alleged to be policy violations. Instead, it merely provided the text of the two policy provisions that petitioner was accused of violating—and nothing more. Thus, the complaint provided petitioner with no notice of the specific conduct that formed the

---

**3.** The 2013-2014 policy similarly required a complaint to include "a detailed statement of the facts supporting the alleged violations."

basis of the alleged violations. Contrary to respondent's argument, this failure was not remedied by the fact that the complaint recited the text of the provisions. Both provisions include such a broad range of actions that it would be impossible for an accused student to discern what particular conduct he or she was alleged to have committed.[4]

As a result of this failure, petitioner did not learn the specific nature of the complainant's allegations against him until he received the initial draft of the investigation report, which took place *after* he had been interviewed by investigators and after the complainant and nine of the witnesses had also been interviewed regarding the allegations. The interview is a significant stage of the investigatory procedure, as it provides the sole opportunity during the process for an accused student to speak directly with investigators. The investigators take notes describing this interview which are incorporated into the investigative report that will ultimately be submitted to the panel. Due to the absence of factual allegations within the complaint, petitioner was required to participate in the interview and respond to the investigators' questions based solely upon his memory of an event that had taken place more than a year and a half earlier, with no knowledge of the specific allegations against him.

This lack of notice not only violated the express requirements of the policy, but also caused prejudice to petitioner. As an illustrative example, a section of the investigative report described the complainant's statement during her interview that petitioner had coerced her to perform oral sex upon him, and then noted that petitioner had not mentioned any form of oral sex during his interview. In his written response, petitioner denied that he and the complainant had engaged in oral sex and asserted that he had not mentioned the subject during the interview because he was not told that the complainant was making that claim. The statement regarding his failure to mention oral sex during his interview remained in the final version

---

4. The complaint included the following text, quoted from the policy: "Sexual [p]enetration: Any sexual penetration (anal, oral or vaginal), however slight, with any object or sexual intercourse, without effective consent. Sexual penetration includes vaginal or anal penetration by a penis, object, tongue or finger and oral copulation by mouth to genital contact or genital or mouth contact . . .. Sexual [t]ouching, [d]isrobing and/or [e]xposure: Any intentional sexual touching, however slight, with any object without effective consent. Sexual touching includes any bodily contact with the breasts, groin, genitals, mouth or other bodily orifice of another or any other bodily contact in a sexual manner. Any disrobing of another or exposure to another by another without effective consent."

of the report, along with—in a different part of the report—his explanatory response. Petitioner had no opportunity to be interviewed about that allegation.

The prejudice created by the failure to notify petitioner of the nature of the factual allegations against him at the outset of the investigation was compounded later in the investigation, when the complainant's written answers to petitioner's questions were withheld until the investigation ended and provided to petitioner for the first time in the final investigative report. The complainant's answers contained a new allegation of an act in violation of the policy that had not previously been alleged or communicated to petitioner—that is, that he had performed oral sex upon the complainant. Petitioner had no notice of this new allegation at a time when he could have defended himself against it by denying it in writing or proposing related questions to the complainant. His only opportunity to respond to the new claim was to do so verbally during the 15-minute commenting period; this was also his only opportunity to address the panel about the entire report, which comprised over 100 pages.[5]

The policy requires a complainant's answers to an accused student's questions to be included in the final investigative report. It neither requires respondent to give them to the accused student earlier nor precludes it from doing so. Thus, if considered in isolation, respondent's treatment of the complainant's answers did not constitute a failure to comply with the policy. Nevertheless, under the circumstances here, respondent's failure to provide the answers to petitioner at an earlier stage of the investigation—or at a minimum, to notify him of the new allegation that the answers contained—presents significant concerns. Respondent had an opportunity to provide petitioner with notice of the new allegation during the course of the ongoing investigation, when petitioner specifically asked the deputy coordinator about the complainant's answers in his written response to the second draft of the investigative report. The deputy coordinator responded that the answers would be included in the final report, but provided no details, and neither advised petitioner that they would include a new allegation of misconduct nor gave him an opportunity to respond to that allegation. Notably, in that same communication, the deputy coordinator stated that petitioner had been given an opportunity to respond to the second draft of the investigative report precisely because it contained new information.

The adjudication panel's final decision did not specify the

---

**5.** Petitioner denied the new allegation during the commenting period.

particular actions that it found to constitute policy violations, but stated only that the complainant "was coerced into acts she was not comfortable performing." Thus, it is impossible to determine whether the panel based its decision, in whole or in part, on the new allegation. Considering all of the circumstances, we find that the assertion of a new allegation for the first time at the close of the investigation, without giving petitioner a meaningful opportunity to respond, compounded the prejudice caused by respondent's earlier failure to specify the factual allegations against petitioner in the complaint and impaired his ability to present a defense.

We further find that respondent failed to comply with its policies as to certain witness interviews and statements. Section V of the 2015-2016 policy defines a witness as one who observes a crime or other conduct in violation of the policy, or who has "information directly relevant to the incident." Initially, we reject petitioner's claim that the statements of witnesses who described conversations with the complainant were hearsay and therefore inadmissible. As a general rule, hearsay evidence is admissible in administrative proceedings, and such evidence may thus be admitted in a college disciplinary proceeding (*see Matter of Budd v State Univ. of N.Y. at Geneseo*, 133 AD3d 1341, 1343-1344 [2015], *lv denied* 26 NY3d 919 [2016]; *see generally Matter of Hoffman v Village of Sidney*, 252 AD2d 844, 845 [1998]). Here, the challenged interviews concerned the witnesses' accounts of statements about the incident that the complainant had made directly to them. As these witnesses had information that met the requisite standard, we find no error in the consideration of the interview notes pertaining to them.

However, the interview notes and statements of two witnesses—referred to as witness 4 and witness 10—should not have been considered. Notes from an interview between witness 4 and the deputy coordinator indicate that witness 4 said that she had heard that the complainant was "in a 'noncommitted relationship' with some guy, but he overstepped one day." This witness did not know what had taken place beyond the fact that the complainant was uncomfortable with the interaction, did not know the identity of the accused student and could not remember who had told her about the incident. These vague statements amount to little more than gossip; this witness statement should not have been included in the investigative report.

As for witness 10, respondent concedes that, as determined in the administrative appeal, the deputy coordinator's joint

interview with witness 10 and the complainant violated the policy requirement that witnesses must be interviewed separately. We further find that neither the interview notes nor a written statement that witness 10 subsequently submitted should have been included in the investigative report, for the separate reason that they concerned a different incident. The notes of witness 10's interview indicate that she described a conversation that she overheard in October 2015—more than a year and a half after the incident at issue here—between the complainant and petitioner's girlfriend. They discussed the 2014 incident, and their conversation later became the subject of an entirely separate disciplinary proceeding against the girlfriend. Petitioner states that the deputy coordinator advised him and his counsel early in the investigation that the proceeding against the girlfriend would be handled entirely separately, that petitioner would not be permitted to make any statements about that proceeding and it would not be addressed in his investigative report.

The interview with witness 10 concerned only her knowledge of the conversation that she overheard; she was not interviewed as part of the investigation of the 2014 incident and had no direct personal knowledge of that matter. A written message that she later submitted likewise concerned only the separate matter. The message also included a statement of her opinion about the mental state of the participants in the conversation that was nothing more than speculation, and failed to constitute "directly relevant" information in any manner. Including the interview and statement of this witness within the investigative report was a violation of the policy, and—in light of petitioner's claim that he was assured that the separate matter would not be included in the report—prejudicial to petitioner.

For the reasons discussed above, and considering the record as a whole, we find that respondent did not substantially comply with its policy during the investigative phase of the process. While any one of the failures discussed above might not have been enough to preclude a finding of substantial compliance, we cannot say that substantial compliance occurred when the multiple failures are considered together. In particular, we find that the failure to establish the nature of the allegations at the outset of the proceeding by stating them in the complaint had an ongoing prejudicial effect upon petitioner's ability to prepare a defense that continued throughout the investigation and was aggravated by respondent's failure to notify him of a new factual allegation until after the investigation had closed.

We further find that respondent failed to comply with its policy in determining the appropriate sanction. Section XII (d) (2) of the 2015-2016 policy provides that, when deciding upon the sanction, the panel may consider previous violations of respondent's Sexual and Gender-Based Misconduct Policy by the accused student if the previous incident was "substantially similar" to the incident for which the individual is now being sanctioned and further "indicates a pattern of behavior and substantial conformity with that pattern." Here, the adjudication panel was provided with information about a previous incident in which petitioner made inappropriate remarks to a female student in a group setting and, as a result, was required to complete a course on sexual harassment. The panel's decision specifically cited this prior incident as a basis for recommending expulsion, stating that, based upon that incident combined with the January 2014 incident, petitioner "pose[d] a danger to other members of [respondent's] [c]ommunity."

The previous incident did not involve any physical contact, sexual activity or coercion to participate in such activity. Upon review, we do not find that it was substantially similar to the January 2014 incident, nor did it indicate a pattern of behavior. The mere fact that both incidents involved violations of the Sexual and Gender-Based Misconduct Policy is not enough. Respondent thus failed to adhere to the policy in providing information about the prior incident to the panel.

Accordingly, both the determination relative to the violations and the recommendation for petitioner's expulsion were not made in substantial compliance with respondent's policy, and must be annulled as arbitrary and capricious (*compare Tedeschi v Wagner Coll.*, 49 NY2d 652, 660 [1980]; *see Matter of Warner v Elmira Coll.*, 59 AD3d at 910-911; *Matter of Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d at 771-772). Petitioner's remaining contentions are rendered academic by this determination.

Egan Jr., Lynch, Mulvey and Aarons, JJ., concur. Ordered that the judgment is reversed, without costs, petition granted, and respondent is directed to reinstate petitioner as a student and expunge all references to this matter from his school record.