Matter of Jacobson v Blaise (2018 NY Slip Op 00205)





Matter of Jacobson v Blaise


2018 NY Slip Op 00205


Decided on January 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2018

524159

[*1]In the Matter of MATTHEW JACOBSON, Petitioner,
v
BUTTERFLY BLAISE, as Title IX Coordinator of the State University of New York at Plattsburgh, et al., Respondents.

Calendar Date: October 20, 2017

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Barry S. Jacobson, New York City, for petitioner.
Eric T. Schneiderman, Attorney General, Albany (Victor Paladino of counsel), for respondents.


Lynch, J.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Clinton County) to review a determination of the State University of New York at Plattsburgh finding petitioner guilty of sexual misconduct in violation of its Student Conduct Manual.
In the early morning hours of October 31, 2015, petitioner, who was a student at the State University of New York at Plattsburgh (hereinafter SUNY), engaged in sexual intercourse with a female student (hereinafter the reporting individual) in her dorm room on three different occasions over an approximately

seven-hour period. Five days later, the reporting individual went to SUNY's health center and reported that she had been sexually assaulted. The nurse at the health center referred the reporting individual to respondent Butterfly Blaise, SUNY's Title IX Coordinator (see 34 CFR 106.2), and filed a report with SUNY's police department. On November 6, 2015, the reporting individual met with Blaise and gave a statement detailing the events of October 31, 2015. On February 17, 2016, Blaise notified petitioner via email that there was a "no contact order" issued on a "matter pertaining to [him]" that she wanted to discuss with him. The two arranged to meet the next day. On February 18, 2016, petitioner met with Blaise and gave her a statement [*2]detailing his recollection of the events of October 31, 2015. Blaise prepared a written summary of the statements given by both petitioner and the reporting individual.
On May 2, 2016, petitioner received a statement of judicial charges issued by respondent Larry Allen, SUNY's Director of Student Conduct. Therein, petitioner was notified that Blaise was charging petitioner with violating two provisions of SUNY's Student Conduct Manual because "[i]t was reported that on 10/31/15, in 142 Harrington Hall, between 12:30am-8:00am, [petitioner] initiated sexual intercourse with another student three different times without establishing affirmative consent." Further, the statement notified petitioner that if he decided to plead "not responsible" to the charge, he could bring witnesses and question the "person making the charge" and directed petitioner to appear "for a [r]eview of [j]udicial [c]harges and [p]rocedures" the following day. It is not clear from the record whether petitioner availed himself of that review. On May 4, 2016, petitioner was notified that a hearing before respondent Student Conduct Board (hereinafter the Board) was scheduled for May 10, 2016. On May 6, 2016, in response to his request for information, Allen sent petitioner a judicial form that included a condensed version of the reporting individual's statement to Blaise, which was characterized as the "details of [the] violation." The hearing was held as scheduled and, on May 10, 2016, petitioner was notified that the Board determined that he was "responsible" for the charges, and the sanction of dismissal was thereafter imposed. In accordance with the student conduct procedures, petitioner submitted an impact statement with regard to the sanction and, on May 11, 2016, petitioner was notified that, as a result of the Board's determination, he would be dismissed from school. Petitioner submitted a timely appeal and, on May 24, 2016, petitioner was notified that SUNY's Judicial Appeal Board upheld the findings of the Board and the sanction of dismissal. Thereafter, petitioner commenced this proceeding pursuant to CPLR article 78, which was transferred to this Court.
In 2015, New York enacted article 129-B of the Education Law, known as the Enough is Enough Law (see L 2015, ch 76). The purpose of this law was to "require all colleges and universities in the State of New York to implement uniform prevention and response policies and procedures relating to sexual assault, domestic violence, dating violence and stalking" (Sponsor's Mem, Senate Bill S5965 [2015]). The disciplinary process is outlined in Education Law § 6444 (5) (b). As explained by the Department of Education, "[t]his section should not be read to extend to private colleges the constitutional due process rights that apply to public colleges. It establishes minimum requirements for cases of sexual and interpersonal violence covered by [article] 129-B, but institutions may offer more rights and requirements" (New York State Education Department, Complying with Education Law article 129-B at 26 [2016], available at http://www.highered. nysed.gov/ocue/documents/Article129-BGuidance.pdf). Particularly relevant here, the law sets forth a definition of affirmative consent — that all educational institutions shall adopt — as "a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent" (Education Law § 6441 [1]). Although the version of SUNY's Student Conduct Manual in effect during the 2015-2016 academic year did not include this express definition of affirmative consent, the parties do not dispute that it was proper for SUNY to apply the standards of the Enough is Enough Law when it responded to the reporting individual's accusation [FN1]. Rather, petitioner contends that SUNY'S determination should be annulled because he was not afforded due process, the Board was not [*3]properly advised as to the definition of affirmative consent and the determination was arbitrary and capricious and not supported by substantial evidence.
We begin by considering petitioner's claim that he was not afforded due process [FN2]. In general, the Enough is Enough Law requires that colleges and universities implement a "students' bill of rights" that includes the right to "[p]articipate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard" (Education Law § 6443; see Education Law § 6444 [5] [c] [iii]). More specifically, the law provides that the minimum process to be afforded an accused student is: (1) notice of the "date, time, location and factual allegations concerning the violation," as well as the "specific code of conduct provisions alleged to have been violated, and possible sanctions"; (2) "an opportunity to offer evidence during an investigation, and to present evidence and testimony at a hearing, where appropriate"; and (3) an ability to appeal the initial determination (see Education Law § 6444 [5] [b]). Further, in order to "effectuate an appeal, [an accused student] . . . shall receive written notice of the findings of fact, the decision and the sanction . . ., as well as the rationale for the decision and the sanction" (Education Law § 6444 [5] [b]). Throughout the proceedings, an accused student enjoys "the right to a presumption that [he or she] is 'not responsible' until a finding of responsibility is made" (Education Law § 6444 [5] [c] [ii]).
We reject petitioner's claim that he did not receive adequate notice of the charge against him. The record confirms that he was first made aware of the reporting individual's claim in February 2016 when the no contact order was issued. Immediately following his meeting with Blaise in February 2016, petitioner provided copies of text messages that he exchanged with the reporting individual during the days leading up to and immediately preceding the events of October 31, 2015, presumably to support his claim that the alleged conduct was consensual. During the evening following his meeting with Blaise, petitioner emailed her to add that he "vaguely remember[ed] asking [the reporting individual] if she was ok during the second time and she said yea[h] I'm fine. I'm not sure if this helps but I vaguely recall that happening." Although petitioner received the formal charges one week prior to the hearing, he consented to the hearing date and did not ask for an adjournment.
As for petitioner's complaint that he did not receive an "evidence packet" until the hearing, there is no "general constitutional right to discovery in . . . administrative proceedings" (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1432 [2017] [internal quotations and citation omitted]), and the Enough is Enough Law does not alter this general rule. In context, after receiving this packet at the hearing, petitioner — who was accompanied by his "advisor of choice" (Education Law § 6444 [5] [c] [i]) — requested a "10-15 minute recess to go over [it]" and he then received 10 minutes to review the packet prior to presenting his response. Notably, this packet included petitioner's statement, the text messages that petitioner had provided to Blaise, the no contact order and the reporting individual's statement as recorded by Blaise. At the close of the hearing, petitioner was granted the five minutes that he had requested to prepare a closing statement. To the extent that he claims that he was not afforded adequate time to prepare an appeal, we note that three days before the Judicial Appeal Board met, petitioner did not contend that he lacked sufficient information, but instead declined an invitation [*4]to appear, choosing to rely on a written submission. Under the circumstances, we find that petitioner was given adequate notice of the charges, and that such notice afforded him the ability to defend himself at the hearing before the Board (see Education Law § 6444 [5] [b]; New York State Education Department, Complying with Education Law article 129-B at 25 [2016]; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016]; Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d 1292, 1294 [2014], lv denied 23 NY3d 908 [2014]).
We also reject petitioner's claim that he was denied due process because he was not permitted to cross-examine the reporting individual. In general, there is a limited right to cross-examine an adverse witness in an administrative proceeding (see Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1432), and "[t]he right to cross[-]examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings" (Winnick v Manning, 460 F2d 545, 549 [1972]; see Blanton v State Univ. of N.Y., 489 F2d 377, 385 [1973]). The Enough is Enough Law does not require such cross-examination (see Matter of Doe v Skidmore Coll., 152 AD3d 932, 934 [2017])[FN3]. To the contrary, in the event that charges are filed after a report of a violation is made, a reporting individual is not obligated to participate in the hearing (see Education Law §§ 6443, 6444 [1] [f]). Under the "Students' bill of rights" section in the Education Law, the reporting person has the right to "[m]ake a decision about whether or not to . . . participate in the judical or conduct process . . . free from pressure by the institution" (Education Law § 6443). This protection is twofold, meaning that a reporting person is entitled to participate or not in the conduct process as he or she sees fit, without pressure from the institution. Contrary to the observation in the dissent, it would be undue pressure for an institution to advise a reporting person that a decision not to participate would hinder the conduct process. Moreover, the reporting person is entitled to keep his or her identity private at all times (see Education Law § 6444 [a] [f]) and to "[w]ithdraw a complaint or involvement from the institution process at any time" (Education Law § 6444 [1] [i]). While a reporting person may request that formal charges be filed against the student accused of violating an educational institution's code of conduct, it is the institution that determines whether such charges are warranted (see Education Law § 6444 [5] [a]; New York State Education Department, Complying with Education Law article 129-B at 25 [2016]), and it was SUNY, not the reporting individual, that had to demonstrate that the facts supported the charge. Here, petitioner was afforded the right to question and did question Blaise, who was the "complainant" and the individual who decided that charges were warranted, albeit on the basis of the reporting individual's statement. This was proper inasmuch as it was Blaise, not the reporting individual, who could explain her conclusion that the evidence demonstrated a lack of affirmative consent (see Matter of Boyd v State Univ. of N.Y. at Cortland, 110 AD3d 1174, 1175 [2013]).
We recognize that in our decisions in both Matter of Doe v Skidmore Coll. (supra) and Matter of Weber v State Univ. of N.Y., Coll. at Cortland (supra), an alternative format for [*5]presenting questions was made available to the accused student. Specifically in Doe, during the investigatory stage, the accused student was permitted to submit written questions to be answered by the reporting person if deemed relevant and appropriate by the investigator (Matter of Doe v Skidmore College, 152 AD3d at 934). In Weber, which involved a hearing conducted in 2014 attended by both the reporting person and the accused student, the accused student submitted questions through the hearing officer who reworked the question "into a more neutral form" (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1432). We are mindful that Weber preceded the Enough is Enough Law and that Doe involved a private institution.
The dichotomy we confront is whether an accused student should be allowed to present questions to the reporting person, who is statutorily entitled to refrain from participating in the "conduct process." At the start of this hearing, Allen, the Hearing Officer, informed petitioner that "[t]he reporting individual . . . is participating via Skype[,] . . . simply observing the proceedings today and not participating in the hearing." Petitioner was informed that he could cross-examine Blaise as the complainant, but not the reporting individual. We conclude that this limitation on petitioner's ability to question the reporting individual did not compromise his right to a fair hearing. A close reading of the statements reveals that there was no material factual conflict between the relatively consistent accounts given by the participants. To illustrate, neither participant was able to recall which one initiated the sexual activity and certainly both conceded that they had been drinking. Given this consistency, there is no need to further detail the conduct at issue. The actual question here is whether affirmative consent was established through the colloquy and conduct outlined in the statements, together with the statements made before the Board. Resolution of this question necessarily called the conclusions drawn by Blaise into issue. For this reason, we conclude that petitioner's due process rights were not compromised. By comparison, where a material factual conflict exists between the statements of a reporting person and an accused student, a mechanism should be made available for the accused student to present questions for the reporting person to address, akin to that utilized in Doe or Weber.
Turning to the issue of affirmative consent, the definition specifically provides that consent to engage in sexual activity "can be given by words or actions" (Education Law § 6441 [1]). In accordance with both common sense and the requirements of the Enough is Enough Law, SUNY's Student Conduct Manual provides further guidance to explain that consent to one sexual act does not necessarily constitute consent for any subsequent sexual act, that consent is necessary even if the person initiating an act is intoxicated, that consent cannot be given by a person who is incapacitated by loss of consciousness, sleep, drugs or alcohol, and that consent to sexual conduct, even if once given, may thereafter be withdrawn at any time (see Education Law § 6441 [2]). Silence or lack of resistance alone is not consent to sexual conduct (see Education Law § 6441 [1]).[FN4]
During the hearing, petitioner asked Blaise to define affirmative consent and she read the statutory definition, including that "consent can be given by words or actions as long as those words or actions create clear permission regarding willingness to engage in sexual activity." Petitioner then asked, "So affirmative consent can be implied or referred [sic] from conduct?", and Blaise responded, "[O]nly if the direct question is: Can I have sex with you? So you must ask directly what it is that you want to do to that person. . . . And the answer affirmatively must [*6]be yes." This explanation was incorrect. The error was compounded when petitioner next inquired whether the consent standard applied to both parties, and Blaise explained that the obligation applied to the person initiating the sexual activity. When petitioner asked, "How do you define initiation?", Blaise explained "that you initiated sexual intercourse by penetrating her." This, too, was erroneous for the concepts of consent and initiation pertain to either verbal communication or the conduct between the participants, not simply the physical act of penetration.
Blaise's mistakes raise a concern with regard to the Board's determination, which was, simply, that petitioner was responsible for violating the Student Conduct Manual because he "initiated sexual intercourse with another student three different times without establishing affirmative consent." By this determination, the Board failed to provide the requisite "findings of fact . . . [and] rationale for the decision and the sanction" (Education Law § 6444 [5] [b]). As a consequence of Blaise's erroneous interpretations, we, like petitioner, are unable to discern whether the Board properly determined that petitioner initiated the sexual activity or even considered whether affirmative consent was given based on the reporting individual's conduct.
On this record, we believe that remittal for a new hearing is the appropriate remedy (see Matter of Monnat v State Univ. of N.Y. at Canton, 125 AD3d at 1177; Matter of Boyd v State Univ. of N.Y. at Cortland, 110 AD3d at 1176; Matter of Kalinsky v State Univ. of N.Y. at Binghamton, 161 AD2d 1006, 1007-1008 [1990]). Upon such remittal, SUNY must provide a process that complies with the mandates of the Enough is Enough Law. As a final matter, we are unable to conclude, on this record, that the facts presented fail to support the violation, but we otherwise decline to consider petitioner's challenge to the sufficiency of the evidence presented to the Board.
McCarthy, J.P., and Clark, J., concur.




Devine, J. (concurring in part and dissenting in part).


We agree with our colleagues that respondent Butterfly Blaise, in her capacity as Title IX Coordinator at the State University of New York at Plattsburgh (hereinafter SUNY), prejudicially misled respondent Student Conduct Board (hereinafter the Board) as to what it meant to say that a person initiated sexual activity and whether the student accusing petitioner of sexual assault (hereinafter the reporting individual) could give affirmative consent to sexual activity through her actions. We part ways on the issue of whether petitioner's due process rights were violated when he was denied an opportunity to question the reporting individual as opposed to Blaise. We believe that they were and, moreover, view that deprivation as so egregious that annulment without remittal is called for.
Our colleagues point out, and we agree, that "the Enough is Enough Law [L 2015, ch 76] does not require a college to permit cross-examination of a complainant or a witness" (Matter of Doe v Skidmore Coll., 152 AD3d 932, 934 [2017]). The Enough is Enough Law does, however, entitle an accused student to a "fair, impartial [process that] provides adequate notice and a meaningful opportunity to be heard" (Education Law § 6443 [4]). It also entitles a reporting individual, who may or may not be the actual victim (see Education Law § 6439 [9]), to file a report and "remain private at all times" if he or she wishes to do so (Education Law § 6444 [1] [f]). That being said, an assurance of privacy under the law only prevents the disclosure of information "necessary to comply with . . . applicable laws" (Education Law § 6439 [6]). It therefore does not prevent disclosure of information needed, as information from a reporting [*7]individual may be, to comply with statutory provisions ensuring that an accused student receive notice of "the date, time, location and factual allegations concerning the violation" and have an opportunity to participate in the investigation (Education Law § 6444 [5] [b] [i]). More importantly, where disciplinary charges of sexual misconduct are involved, the information may well have to be disclosed for the accused student's "review [of] . . . available [and relevant] evidence in the case file, or otherwise in the possession or control of the institution" and at the hearing itself (Education Law § 6444 [5] [c] [v]; see Education Law § 6444 [5] [b] [ii]).
There is accordingly nothing in the law that prevents a reporting individual from participating in a disciplinary hearing. Indeed, a reporting individual is only afforded the right to decide whether to participate without "pressure by the institution" (Education Law § 6443 [3]). It is not institutional pressure to say that a reporting individual will need to participate in the disciplinary process or risk hindering it, perhaps fatally so. If accounts of what transpired materially differ, for example, the testimony of a reporting individual may be needed to overcome the "presumption that the [accused student] is 'not responsible'" (Education Law § 6444 [5] [c] [ii]).
Provisions of SUNY's Student Conduct Manual, in fact, suggest that the testimony of a reporting individual is to be anticipated. The manual affords an accused student the right to a hearing, "[t]he right to bring witnesses" and "[t]he right to question any witnesses presented." The manual also directs that, in cases involving accusations of sexual assault, "reasonable accommodations" be made to "facilitate" the questioning of a reporting individual at a hearing without imperiling his or her safety.
In any event, as the Department of Education has recognized — and contrary to the assertion of our colleagues — provisions of the Enough is Enough Law dictating the appropriate response to reports of misconduct only set the "minimum requirements for cases of sexual and interpersonal violence" to be followed by all institutions and do not speak to "the [c]onstitutional due process requirements that apply to public colleges" (New York State Education Department, Complying with Education Law article 129-B at 26 [2016], available at http://www.highered.nysed.gov/ ocue/documents/Article129-BGuidance.pdf). A right to due process is afforded to accused students by the Student Conduct Manual but, even if it were not, "[a] public university must also provide its students with the full panoply of due process guarantees" in disciplinary matters (Matter of Nawaz v State Univ. of N.Y. Univ. at Buffalo School of Dental Medicine, 295 AD2d 944, 944 [2002] [internal quotation marks and citation omitted]; see US Const, amend XIV, § 1; NY Const, art I, § 6; Matter of Mary M. v Clark, 100 AD2d 41, 43 [1984]; cf. Matter of Doe v Skidmore Coll., 152 AD3d at 934-935 [addressing student discipline at a private institution]).
"Due process is, of course, a flexible concept that calls for such procedural protections as the particular situation demands" (People v Aviles, 28 NY3d 497, 505 [2016]; see Mathews v Eldridge, 424 US 319, 334-335 [1976]). In order to determine what protections are appropriate in a given situation, the factors to be considered are: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake" (Nelson v Colorado, US , , 137 S Ct 1249, 1255 [2017]; see Mathews v Eldridge, 424 US at 335; Matter of State of New York v Floyd Y., 22 NY3d 95, 105 [2013]). In the student disciplinary context, due process entitles an accused student to "the names of the witnesses against [him or her], the opportunity to present a defense, and the results and finding of the hearing" (Matter of Gruen v Chase, 215 AD2d 481, 481 [1995]; accord Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016]; see Matter of [*8]Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1119 [2013]). There is only "a limited right to [confront and] cross-examine adverse witnesses" in administrative proceedings, however, so the question is whether the balance of interests in this case afforded that right to petitioner (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1432 [2017] [internal quotation marks and citations omitted]; see Matter of Gordon v Brown, 84 NY2d 574, 578 [1994]; see also Winnick v Manning, 460 F2d 545, 550 [2d Cir 1972]).[FN1]
Cross-examination is not required in all school disciplinary proceedings for the reason that these proceedings lie along a spectrum of seriousness, with many involving picayune offenses and resulting in penalties that involve little beyond temporary embarrassment and a setback such as suspensions for weeks or months (see Blanton v State Univ. of N.Y., 489 F2d 377, 381-382 [2d Cir 1973]; Winnick v Manning, 460 F2d at 547-548; see also Goss v Lopez, 419 US 565, 584 [1975] ["rudimentary procedures" in disciplinary proceedings will suffice for students facing short suspensions, but "[l]onger suspensions or expulsions . . . may require more formal procedures"]). The disciplinary proceeding here lies on the extreme end of that spectrum and its outcome was of great personal importance to petitioner, as "[a] finding of responsibility for a sexual offense can have a 'lasting impact' on [his] personal life, in addition to his 'educational and employment opportunities,' especially" because an established finding of sexual violence would and did result in permanent dismissal from SUNY (Doe v University of Cincinnati, 872 F3d 393, 400 [6th Cir 2017], quoting Doe v Cummins, 662 Fed Appx 437, 446 [6th Cir 2016]; see Plummer v University of Houston, 860 F3d 767, 773 [5th Cir 2017]).
SUNY has important countervailing interests in ensuring that reports of sexual misconduct are adequately addressed (see Education Law § 6443 [2]), preventing the "potential emotional trauma" the reporting individual might face should she be hauled into the hearing room to testify (Doe v University of Cincinnati, 872 F3d at 403) and "preserving its limited administrative resources" (Plummer v University of Houston, 860 F3d at 773; see Goss v Lopez, 419 US at 580). That being said, producing the reporting individual could have been accomplished with little impact on those concerns. The reporting individual was observing the hearing electronically and could have related her version of events to the Board in the same way. Indeed, respondent Larry Allen, SUNY's Director of Student Conduct and the Hearing Officer, was empowered under SUNY's Student Conduct Manual to make this "reasonable accommodation[]" to "facilitate" her participation or, alternatively, could have allowed her to testify "with a room partition" separating her from petitioner "or [by] asking/responding to questions indirectly via the [H]earing [O]fficer."[FN2]
As for the risk of erroneous deprivation absent confrontation, it was significant. Petitioner and the reporting individual made statements to Blaise about the incident that were related by Blaise at the hearing and the hearsay statements materially differed as to how the sexual contact was initiated and what the reporting individual did and said throughout. For example, Blaise related that the reporting individual related how she was drunk, did not recall who made the telephone call that resulted in petitioner coming to her room and may have blacked out when sexual intercourse was initiated. Blaise reported the statements of petitioner, in contrast, that he and the reporting individual were "pretty drunk," but that gave no hint as to whether either was insensible. Petitioner instead allegedly told Blaise that he and the reporting individual began making out after he arrived at her room. He asked the reporting individual about anal sex but dropped the subject when she expressed ambivalence, after which she removed her own clothes except for a short shirt, the two engaged in foreplay that included her manually stimulating him and she told him to "[b]e careful" due to his girth when he began engaging in vaginal sex.
The Board was asked to determine which of these accounts should be believed, a task that was hampered by its inability to hear the reporting individual offer her account firsthand and have that account, including her claims of extreme intoxication and lack of recollection, challenged by cross-examination. Blaise's trusted role as trainer, advisor and presenter compounded this problem, adding the imprimatur of authority and truthfulness to the hearsay that she was repeating, concomitantly impeaching petitioner. As such, Blaise ostensibly vouched for and bolstered the credibility of the absent reporting individual, enhancing the impact of the hearsay. She further submitted her findings of fact and conclusions of law at the hearing. In essence, "that's what she told me" became "that's what happened" and this alone was deemed sufficient to overcome the presumption that petitioner was "not responsible" (Education Law § 6444 [5] [c] [ii]). It is troubling that the Board, duty bound to determine who to believe when faced with competing versions of events, resolved this fundamental credibility issue without having had the opportunity to directly gauge the reporting individual's credibility. Indeed, petitioner voiced his frustration with this situation on the record, asserting that Blaise had misrepresented his own account and that he did not remember who initiated sexual activity, but that the reporting individual had "encouraged . . . all activities" over the course of their night- and [*9]morning-long encounter. He further disputed various details of the reporting individual's account, but stated that he felt forced to "assume that everything [the reporting individual] said [to Blaise] was true" in the absence of a chance to question her and observe her demeanor. In this swirl of confusion as to the accuracy of Blaise's hearsay account of her interviews with the reporting individual and petitioner, as well as what the two actually remembered about the encounter, there is no doubt that allowing petitioner "to confront and question" the reporting individual in one form or another "would have . . . aided the truth-seeking process and reduced the likelihood of an erroneous deprivation" (Doe v University of Cincinnati, 872 F3d at 404).
The manner in which petitioner conducted himself at times throughout these proceedings — while unfortunate — does not take away from the need to provide a fair and just process. After balancing the relevant factors in a case that "had resolved itself into a problem of credibility" begging for cross-examination to resolve, we cannot escape the conclusion that due process demanded an opportunity for petitioner to conduct it directly or via a method set forth in SUNY's Student Conduct Manual (Winnick v Manning, 460 F2d at 550; see Goldberg v Kelly, 397 US 254, 269 [1970]; Gomes v University of Maine Sys., 365 F Supp 2d 6, 27 [D Me 2005]; Matter of Hecht v Monaghan, 307 NY 461, 470 [1954]; cf. Flaim v Medical Coll. of Ohio, 418 F3d 629, 641 [6th Cir 2005]). The Hearing Officer deprived petitioner of that right without a second thought — notwithstanding that the reporting individual was electronically present — and prevented the Board from hearing readily available testimony that was key to its assessment of credibility. Particularly in conjunction with the Hearing Officer's further willingness to allow Blaise to offer an inaccurate and prejudicial definition of affirmative consent and the term initiate, we "see no justification for remitting the matter for a new hearing and, thus, affording [SUNY] a second opportunity to establish a competent case against petitioner" (Matter of DiCaprio v Trzaskos, 203 AD2d 759, 761 n [1994]; see Matter of Girard v City of Glens Falls, 173 AD2d 113, 117-118 [1991], lv denied 79 NY2d 757 [1992]). We would therefore annul the determination and expunge all references to this matter from petitioner's school record.
Pritzker, J., concurs.
ADJUDGED that the determination is annulled, without costs, and matter remitted to the State University of New York at Plattsburgh for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The Enough is Enough Law went into effect October 5, 2015 (see L 2015, ch 76, § 1). 

Footnote 2: Because petitioner raised the majority of these claims as part of his administrative appeal, they are preserved for our review (see Matter of Monnat v State Univ. of N.Y. at Canton, 125 AD3d 1176, 1176-1177 [2015]).

Footnote 3: In their brief, respondents cited to the United States Department of Education's administrative guidance as support for the premise that due process does not entitle a petitioner to cross-examine a reporting individual. In a letter to the Court prior to oral argument, respondents advised that the federal administrative guidance has since been withdrawn (see Dear Colleague Letter, https://www2.ed.gov/about/offices/list/ocr/ letters/colleague-title-ix-201709.pdf). That said, the Enough is Enough Law remains intact.

Footnote 4: This is markedly distinguishable from the Penal Law (see Penal Law § 130.05 [2]; see also New York State Education Department, Complying with Education Law article 129-B at 10 [2016]).

Footnote 1: The opportunity to cross-examine an adverse witness is guaranteed by statute in situations where a public agency is obliged to hold an adjudicatory hearing (see State Administrative Procedure Act §§ 102 [3]; 306 [3]). A hearing is not required under the minimum requirements set by Education Law § 6444 (5) (b) (see Matter of Doe v Skidmore Coll., 152 AD3d at 934), rendering the protections of the State Administrative Procedure Act inapplicable (see Matter of Gruen v Chase, 215 AD2d at 481; Matter of Mary M. v Clark, 100 AD2d at 43).

Footnote 2: At the time of the hearing, the administrative guidance provided by the United States Department of Education warned against allowing an accused student unfettered cross-examination (see United States Department of Education Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence at 31 [Apr. 29, 2014], available at https://www2.ed.gov/about/ offices/list/ocr/docs/qa-201404-title-ix.pdf). The guidance has since been rescinded due to, among other things, concerns that the procedures it recommended were fundamentally unfair to accused students (see United States Department of Education Office of Civil Rights, Dear Colleague Letter at 1 [Sept. 22, 2017], available at https://www2.ed.gov/ about/offices/list/ocr/ letters/colleague-title-ix-201709.pdf). In any event, even the 2014 guidance found that cross-examination would be appropriate if it was conducted through procedures akin to those set forth in SUNY's Student Conduct Manual (see United States Department of Education Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence at 31 [Apr. 29, 2014], available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title- ix.pdf).