Matter of Doe v Cornell Univ. (2018 NY Slip Op 05255)





Matter of Doe v Cornell Univ.


2018 NY Slip Op 05255


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

526013

[*1]In the Matter of JOHN DOE, Appellant,
v
CORNELL UNIVERSITY, Respondent.

Calendar Date: June 4, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Aarons, JJ.


Bracewell LLP, New York City (Paul L. Shechtman of counsel), for appellant.
Valerie Cross Dorn, Office of University Counsel, Ithaca and Saul Ewing Arnstein & Lehr, LLP, Philadelphia, Pennsylvania (James A. Keller of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from a judgment of the Supreme Court (Faughnan, J.), entered December 15, 2017 in Tompkins County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent, among other things, finding petitioner guilty of violating respondent's sexual assault policy.
In August 2016, petitioner and the complainant, both of whom were students at respondent, attended a fraternity party at an off-campus residence. They agree that they played a game of beer pong together and, at some point, went upstairs to a private room, where they engaged in a conversation about birth control, condoms and sexually transmitted diseases. The complainant maintains that she was very confused during this conversation and, because she was highly intoxicated, she remembers only portions of their interaction. She does, however, recall one point where petitioner was on top of her engaging in sexual intercourse, a fact that petitioner does not dispute. After the encounter, the complainant was found by several students sprawled out on a bed by herself in a highly intoxicated condition, unconscious, but breathing.
A medical examination of the complainant found physical evidence of sexual intercourse and, a few days later, she filed a complaint with respondent's Title IX office alleging that petitioner violated respondent's sexual assault policy by engaging in sexual intercourse "without her affirmative consent and/or while she was incapable of consent by reason of mental [*2]incapacity."[FN1] Four days later, petitioner filed a Title IX complaint of his own asserting the same allegations against the complainant. In October 2016, the complainant filed a second complaint alleging that petitioner violated respondent's policy against retaliation by filing his sexual assault complaint in reprisal for her allegations. Approximately two weeks later, petitioner followed with his own retaliation complaint.
An investigation ensued, during which petitioner, the complainant and several witnesses were interviewed. Prior to an April 2017 hearing on the complaints, petitioner and the complainant were each permitted to submit proposed questions and topics to be explored thereat. Some of petitioner's proposed questions were ultimately excluded as irrelevant, prohibited by procedure or law, unduly prejudicial or cumulative of other evidence. Following the hearing, a Hearing Panel found, in a unanimous decision, that a preponderance of the evidence established that petitioner violated respondent's sexual assault and retaliation policies, and that the complainant was not responsible for the allegations in petitioner's complaints. As a result, petitioner was suspended for two years. Upon appeal, respondent's Appeal Panel affirmed the Hearing Panel's determination.
Petitioner thereafter commenced this CPLR article 78 proceeding to annul respondent's determination, claiming that the Hearing Panel failed to substantially comply with respondent's hearing submissions procedure and that respondent's determination was arbitrary and capricious. Supreme Court dismissed the petition, and petitioner now appeals.[FN2]
Petitioner contends that the Hearing Panel violated respondent's procedure governing hearing submissions when it refused to ask the complainant all of the questions he submitted in anticipation of the April 2017 hearing. We disagree. "Where, as here, no hearing is required by law, a court reviewing a private university's disciplinary determination must determine 'whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious'" (Matter of Doe v Skidmore Coll., 152 AD3d 932, 935 [2017], quoting Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst., 260 AD2d 992, 993 [1999]; see Matter of Hyman v Cornell Univ., 82 AD3d 1309, 1310 [2011]). A university's determination will be annulled only where it has failed to substantially comply with its procedures or where its determination lacks a rational basis (see Matter of Doe v Skidmore Coll., 152 AD3d at 935; Matter of Hyman v Cornell Univ., 82 AD3d at 1310; Matter of Warner v Elmira Coll., 59 AD3d 909, 910 [2009]).
With respect to hearing submissions, respondent's procedure permits each party to submit proposed questions or topics for individuals who might testify during the hearing. The procedure specifically grants the chair of the Hearing Panel discretion to "determine which of the parties' requested questions will be asked or topics covered," and permits the chair to disregard questions that are irrelevant, prohibited by applicable procedures or law, unduly [*3]prejudicial or cumulative. While the Hearing Panel declined to ask the complainant all of the questions that petitioner proposed prior to the hearing, many of the topics of such questions were addressed elsewhere in the record and were thus available for the Hearing Panel's review. Moreover, as Supreme Court correctly pointed out, the right of confrontation or cross-examination is not directed or guaranteed under respondent's procedures, nor is it required by the Enough is Enough Law (see Matter of Doe v Skidmore Coll., 152 AD3d at 934; see generally Education Law § 6444 [5] [b] [ii])[FN3]. Indeed, "[a] student subject to disciplinary action at a private educational institution is not entitled to the full panoply of due process rights," and "[s]uch an institution need only ensure that its published rules are substantially observed" (Matter of Kickertz v New York Univ., 25 NY3d 942, 944 [2015] [internal quotation marks and citation omitted]). Given that the Hearing Panel substantially complied with its hearing submissions procedure, petitioner's procedural challenge is unavailing.
Next, contrary to petitioner's contention, we find that the Hearing Panel's determination that petitioner violated respondent's sexual assault policy is rationally based upon the record evidence. In a comprehensive and well-reasoned determination that appropriately reconciled conflicting narratives of the parties' interactions, the Hearing Panel unanimously concluded that a preponderance of the evidence — the standard specified in respondent's procedures — established that the complainant was unable to provide affirmative consent to the sexual encounter by virtue of her incapacitation by alcohol, and that petitioner knew or should have known by a reasonable, sober person standard, that the complainant was incapacitated. Although petitioner makes much of the fact that the complainant stated that she was on birth control in response to a question about whether he should use a condom — suggesting that this statement was evidence of affirmative consent — this discussion does not exempt him from culpability under respondent's sexual assault policy when considering the compelling circumstantial evidence of the complainant's highly intoxicated state.
The record establishes that, on the night in question, petitioner (a freshman) and the complainant met, for the first time, while playing beer pong at a fraternity party during the first day of freshman orientation. The complainant reported that, at this party, she consumed beer and vodka on an empty stomach in a short period of time. Two students at the party recalled that, after the complainant and petitioner played beer pong, petitioner repeatedly asked whether there was a private room to which he could take the complainant. The first of these students stated that the complainant seemed "completely . . . with it" at this time. However, the second student, when interviewed shortly after the party, described the complainant as "very drunk," slurring her words and leaning on the wall to catch her balance; at the hearing nearly eight months later, this student stated that "she was leaning . . . [on] the doorframe, like using it as support . . . [t]hat sort of made me [think] that maybe she's drunk." At some point, petitioner and the complainant descended a fire escape and climbed through a window into the bedroom where the sexual [*4]intercourse occurred. Although the complainant could not remember much about the encounter, she did remember trying to push petitioner off of her at one point, stating that she would not have done so if the sex had been consensual.
After the purportedly consensual encounter, petitioner left the bedroom to return to the party, where he bragged in salacious terms to two individuals about having had sex with the complainant. At some point, several students found the complainant alone and unconscious on a mattress wearing her bra, facing sideways and sprawled diagonally [FN4]. One student recalled that the complainant's underwear was halfway down her legs around her knees. These students described their difficulty waking the complainant up, explaining that they resorted to "slapping, shaking and . . . shouting." Upon being awoken, the complainant immediately said that she had too much to drink and mumbled something "incoherent" about a freshman. Several witnesses described the complainant as "very, very intoxicated" when they found her, noting that she appeared pale, was "unable to . . . say anything clearly," was slurring her words and was making grunting noises in response to their questions [FN5]. Moreover, although petitioner maintained that he had consumed alcohol that evening, numerous witnesses explained that petitioner did not appear to be impaired by alcohol, and petitioner's own expert opined that, in his professional opinion, petitioner was not himself incapacitated. This same expert calculated the complainant's peak blood alcohol content to be .21% and opined that she likely had an alcohol-induced blackout that evening.
While petitioner maintained that the complainant appeared fully capable of making informed decisions prior to, during and after the sexual encounter, that he only saw her consume two beers that night and that she was fully communicating and conscious when he left her, his credibility was called into question based upon certain statements that he gave to the police about the incident that he later admitted were false. His contentions were further undermined by the manner in which the complainant was found. Under these circumstances, therefore, we find no basis upon which to disturb the Hearing Panel's decision to discredit his explanation of the interaction (cf. Matter of Ebert v Yeshiva Univ., 28 AD3d 315, 315 [2006]). Furthermore, and contrary to petitioner's contention, the testimony of petitioner's expert indicating that individuals who are in a state of being "blackout" drunk do not always appear outwardly incapacitated does not render the Hearing Panel's determination irrational, particularly given the condition in which the complainant was found after the encounter. Based upon the foregoing, the record provides a rational basis for the Hearing Panel's determination that petitioner violated respondent's sexual assault policy.
The Hearing Panel's determination that petitioner violated respondent's retaliation policy by filing a sexual assault complaint against the complainant is likewise rationally based upon a [*5]the record evidence. Petitioner's contention that the complainant sexually assaulted him is premised, in part, upon an allegation that, after they engaged in sexual intercourse, petitioner attempted to leave the room and return to the party but the complainant pulled him back to the bed and performed oral sex without his consent. This assertion is belied by petitioner's actions after the encounter, including the fact that he bragged about the encounter, sent text messages indicating that he had a great time at the party, acted in an intimidating manner toward the complainant during the ensuing investigation, stated that the sex was consensual during an initial interview with a detective and formally made a claim of sexual assault only after one was lodged against him. We further reject the assertion that petitioner cannot be held accountable for retaliation because he acted on counsel's advice when he filed the complaint, as such advice did not vitiate his duty under respondent's retaliation policy to refrain from filing a specious claim in bad faith. Accordingly, the determination that petitioner violated respondent's retaliation policy will not be disturbed.
McCarthy, J.P., Lynch, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1:Under respondent's sexual assault policy, "[s]omeone who is under the influence of alcohol, drugs or other intoxicants may be incapacitated and therefore unable to consent depending on the level of incapacitation."

Footnote 2:We denied petitioner's motion for a stay of the two-year suspension pending appeal (see 2018 NY Slip Op 61883[U]).

Footnote 3:"The Enough is Enough Law requires colleges to ensure that every student is afforded certain rights in proceedings involving accusations of sexual activity in violation of a college's code of conduct, including 'an opportunity to offer evidence during an investigation, and to present evidence and testimony at a hearing, where appropriate" (Matter of Doe v Skidmore, 152 AD3d at 934, quoting Education Law § 6444 [5] [b] [ii] [emphasis added]).

Footnote 4:The individual with whom petitioner inquired about a private room for a second time surmised that the complainant was found in this condition only "30 [or] 40 minutes . . . maybe less" after his encounter with petitioner.

Footnote 5:The complainant had to be escorted home by a friend, who was so concerned for her well-being that she placed a backpack on the complainant to diminish the chance that she would roll over and choke if she vomited in the middle of the night.