■ In the Matter of MICHAEL WEBER, Petitioner, v STATE UNIVERSITY OF NEW YORK, COLLEGE AT CORTLAND, et al., Respondents. [55 NYS3d 753]—

McCarthy, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Tompkins County) to review a determination of respondent State University of New York, College at Cortland finding petitioner guilty of sexual misconduct in violation of said respondent's code of conduct.

In May 2013, petitioner—then a student at respondent State University of New York, College at Cortland (hereinafter SUNY Cortland)—engaged in sexual intercourse with the victim. A few hours after the incident, the victim reported the intercourse as a sexual assault at a local emergency room and, shortly thereafter, she reported the incident to SUNY Cortland. SUNY Cortland subsequently charged petitioner with two violations of its Code of Student Conduct (hereinafter the code), rape and sexual assault. Following a disciplinary hearing (hereinafter the first hearing) and subsequent administrative review, petitioner was found responsible for the charges and was dismissed from the school. That determination was annulled by petitioner's subsequent CPLR article 78 proceeding, based on a finding that SUNY Cortland did not comply with its own procedural rules, and the matter was remitted for a new hearing.

In June 2014, a rehearing was commenced, but was adjourned, before any evidence was presented, at petitioner's request in response to his claim that the Hearing Officer was biased. In July 2014, the rehearing was reconvened before a different Hearing Officer and petitioner again objected on the ground of hearing officer bias, but his objection was explicitly

rejected and the hearing proceeded. After a six-hour hearing at which petitioner, the victim and other witnesses testified, the Hearing Officer issued a decision finding petitioner responsible for rape and sexual assault. The Suspension Review Panel adopted the Hearing Officer's decision and ordered petitioner dismissed from the school. The decision was affirmed, upon administrative appeal, by the Vice President of Student Affairs. Thereafter, petitioner commenced this CPLR article 78 proceeding, which was transferred to this Court.

The determination that petitioner committed the violations will be upheld if they are supported by substantial evidence in the record (see CPLR 7803 [4]; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1120 [2013]; Matter of Abrahamian v City Univ. of N.Y., 170 AD2d 233, 233 [1991]). Moreover, credibility determinations are " 'within the sole province of [the Vice President of Student Affairs]' " (Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016], quoting Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d 1292, 1294 [2014], lv denied 23 NY3d 908 [2014]). The code's prohibition on rape applies to "[t]he act of sexual intercourse without consent," while the prohibition on sexual assault includes "[a]ny engagement in sexual activity with another person without their consent." At the time of the alleged offense, the code specified that "[t]he act of consent requires spoken words or behavior that indicates, without doubt to either party, a mutual agreement to participate in sexual intercourse or other sexual activities. Indicators of consent do not include silence or past or present sexual relationships."

Substantial evidence supports the determination that the victim did not consent to having sexual intercourse with petitioner. The record evidence is uncontested to the extent that it established that petitioner and the victim were introduced at a bar and engaged in dancing and drinking alcoholic beverages. They left the bar when it closed and proceeded to a nearby playground, where the victim consented to engaging in oral sex with petitioner. According to the victim, when they left the playground, she repeatedly asked to go to a friend's house instead of proceeding to petitioner's house as he had proposed, but petitioner said "no." After petitioner and the victim arrived at petitioner's house, they entered petitioner's room.

At around this time, the victim sent text messages to at least three individuals indicating that she feared that she was about to be raped. Without asking the victim whether she wished to

have intercourse, petitioner asked whether she wanted him to use a condom, to which the victim replied yes. At the hearing, the victim stated that she believed that she was going to be raped and preferred that it occur with petitioner wearing a condom. According to the victim, prior to any intercourse occurring, she strapped on a football helmet that petitioner had placed on her head and thereafter pulled away from petitioner's attempts to kiss her. Moreover, the victim explained that, when she answered a friend's phone call, petitioner pushed her back onto the bed, knocking the phone out of her hand. The victim stated that she then told petitioner that she "needed" to go to her friend's house. The victim further indicated that she then just closed her eyes and froze while petitioner had intercourse with her. Both petitioner and the victim agreed that, to the extent that the victim's clothes were removed, they were removed by petitioner. When asked whether the victim had verbally consented to having intercourse in his room, petitioner stated that he had assumed that the victim wanted to have intercourse based on preceding events at the bar and the playground. Considering the record evidence and deferring to the credibility determinations of the Vice President of Student Affairs, substantial evidence supports the determination that petitioner committed the violations of rape and sexual assault (*see Matter of Lambraia v State Univ. of N.Y. at Binghamton*, 135 AD3d at 1146; *Matter of Lampert v State Univ. of N.Y. at Albany*, 116 AD3d at 1294; *Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam*, 105 AD3d at 1120).

Next, SUNY Cortland did not violate any prehearing disclosure requirements or petitioner's due process rights by considering evidence that had been admitted during the first hearing. The code provides students accused of misconduct the "right to hear and respond to all information presented against her [or] him." Nothing in the code required SUNY Cortland to provide further notice that evidence that had been presented against petitioner in the first hearing would also be presented against him in the instant hearing, and petitioner has no due process protection from the introduction of such evidence, which petitioner was well aware existed given that it had already been presented and considered at the first hearing. More generally, "[i]t is settled . . . that there is no general constitutional right to discovery in . . . administrative proceedings" (*Matter of Miller v Schwartz*, 72 NY2d 869, 870 [1988]). Further, the fact that Supreme Court annulled the determination that was reached after the first hearing in no way indicated that evidence at that hearing was per se inadmissible. Thus, petitioner's contentions in regard to the evidence previously

introduced at the first hearing are without merit (*see generally Matter of Mary M. v Clark*, 100 AD2d 41, 44 [1984]).

Next, petitioner's ability to question witnesses was not unduly curtailed. "Unlike the constitutional right to confrontation in criminal actions, parties in administrative proceedings have only a limited right to cross-examine adverse witnesses as a matter of due process" (*Matter of Kosich v New York State Dept. of Health*, 49 AD3d 980, 983 [2008] [citations omitted], *appeal dismissed* 10 NY3d 950 [2008]). The code provides that an accused student has "the right to question all parties through the student conduct body." The record reflects that the Hearing Officer changed the style of certain questions that petitioner submitted from traditional, leading cross-examination type statements into a more neutral form. The record also reflects that such alterations did not substantially change the information sought by petitioner in his submitted questions.

Moreover, petitioner did not have a right to examine the victim regarding psychiatric conditions referenced in her medical records. Indeed, criminal defendants facing a deprivation of liberty do not have a due process right to confront alleged victims with past psychiatric history absent proof that the records are " 'probative of the victim's veracity or any tendency to falsely report sex crimes' " (*People v Serrano-Gonzalez*, 146 AD3d 1013, 1016 [2017], quoting *People v Murphy*, 188 AD2d 742, 744 [1992], *lv denied* 81 NY2d 890 [1993]). As there is no evidence that the victim's psychiatric history was probative of veracity or a tendency to falsely report sex crimes, and given that petitioner has no greater due process rights than a criminal defendant, he could not have been deprived of due process by the Hearing Officer's determination that he could not examine the victim in regard to her psychiatric history (*see generally People v Serrano-Gonzalez*, 146 AD3d at 1016-1017; *People v Murphy*, 188 AD2d at 744). Moreover, we find that petitioner had ample opportunity to introduce evidence and ask questions to the extent that the evidence or questions were not redundant in regard to evidence previously presented. Considering the foregoing, the limitations on petitioner in regard to the presentation of evidence and the confrontation of witnesses "did not infuse the proceeding with unfairness" (*Matter of Casamassima v New York State Dept. of Health, Admin. Review Bd. for Professional Med. Conduct*, 135 AD3d 1200, 1201 [2016], *lv denied* 27 NY3d 912 [2016]; *see Matter of Groht v Sobol*, 198 AD2d 679, 681 [1993], *lv dismissed and denied* 83 NY2d 961 [1994]).

Likewise, petitioner's due process rights were not violated by

the fact that petitioner was unable to have SUNY Cortland present all of its evidence prior to him having to choose whether to present an opening statement or other evidence, or by the fact that, more generally, he was denied the opportunity to dictate the order in which witnesses testified.* The order of the introduction of evidence was not indicative of the burden of proof being placed on petitioner, and the record does not otherwise support his contention that he was tasked with the burden of proof (*see generally Matter of Caltabiano v New York State Employees' Retirement Sys.*, 135 AD2d 113, 115 [1988]).

Petitioner's arguments regarding bias against him are without merit. "It is beyond dispute that an impartial decision maker is a core guarantee of due process, fully applicable to adjudicatory proceedings before administrative agencies" (*Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d 158, 161 [1990] [citations omitted]). To that end, the code specifically guarantees a student accused of misconduct the right to a hearing before an unbiased student conduct body and further provides the student the right to object to the hearing officer presiding over the hearing. However, "[b]ecause hearing officers are presumed to be free from bias, an appearance of impropriety is insufficient to set aside an administrative determination; the petitioner must provide factual support for his or her claim of bias and prove that the outcome flowed from that bias" (*Matter of Bruso v Clinton County*, 139 AD3d 1169, 1170 [2016] [internal quotation marks, brackets and citations omitted]; *see Matter of Donlon v Mills*, 260 AD2d 971, 974 [1999], *lv denied* 94 NY2d 752 [1999]).

Petitioner objected to the Hearing Officer on the grounds that she (1) was familiar with the victim from a sports program, (2) was "previously removed" as the Hearing Officer in his case, (3) had engaged in advocacy and had strong convictions and beliefs about women's issues and (4) was an interim administrator at SUNY Cortland. Petitioner provided no proof as to an actual relationship between the Hearing Officer and the victim, the Hearing Officer had not been not previously "removed" from petitioner's case and petitioner offered no proof of how alleged beliefs about "women's issues" or administrative responsibilities bore on the Hearing Officer's impartiality. Accordingly, petitioner failed to overcome the presumption that the Hearing Officer was unbiased (*see Matter of Bruso v Clinton*

---

* Importantly, petitioner never attempted to recall any witnesses and never sought to provide further testimony himself on the ground of his right to respond to evidence against him. Moreover, petitioner took advantage of his opportunity to make a closing statement.

*County*, 139 AD3d at 1171). Moreover, the evidentiary and procedural rulings that were adverse to petitioner do not lead to a presumption of bias on the part of the Hearing Officer or the Director of Student Conduct (*see Matter of Knight v New York State & Local Employees' Retirement Sys.*, 266 AD2d 774, 776 [1999]). Further, the fact that certain Suspension Review Panel members had considered petitioner's case after the first hearing did not establish their bias as to the determination at issue (*see Matter of Compasso v Sheriff of Sullivan County*, 29 AD3d 1064, 1065 [2006]; *Matter of Joseph v Stolzenberg*, 198 AD2d 506, 506 [1993]). "[I]t is not contrary to due process to allow . . . administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around" (*Withrow v Larkin*, 421 US 35, 57 [1975]).

Petitioner's remaining contentions do not require extended discussion. While a petitioner is entitled to a statement detailing factual findings and the evidence relied on in reaching a determination of guilt (*see Matter of Boyd v State Univ. of N.Y. at Cortland*, 110 AD3d 1174, 1175 [2013]), petitioner's contention that he is similarly entitled to a detailed explanation, from the Suspension Review Panel, as to why it would dismiss him for violating the prohibition on rape and sexual assault is without merit (*see Matter of Stolz v Board of Regents of Univ. of State of N.Y.*, 4 AD2d 361, 365 [1957]). Moreover, petitioner's claim that he was unable to obtain a written transcript for the purposes of an appeal until shortly before the appeal deadline is of no moment given that the code contemplates access to the audio recording of a hearing for the purposes of filing an appeal, and the record does not establish that petitioner made an effort to access such recording (*see generally Matter of Lambraia v State Univ. of N.Y. at Binghamton*, 135 AD3d at 1147). Finally, the fact that petitioner was dismissed as a consequence of committing rape and sexual assault does not shock one's sense of fairness, and therefore the penalty will not be disturbed (*see Matter of Lampert v State Univ. of N.Y. at Albany*, 116 AD3d at 1294). Petitioner's remaining contentions have been considered and are without merit.

Egan Jr., Lynch, Devine and Clark, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

