Matter of Agudio v State Univ. of N.Y. (2018 NY Slip Op 05647)





Matter of Agudio v State Univ. of N.Y.


2018 NY Slip Op 05647


Decided on August 2, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 2, 2018

525282

[*1]In the Matter of ARIEL C. AGUDIO, Petitioner,
v
STATE UNIVERSITY OF NEW YORK et al., Respondents.

Calendar Date: June 4, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Aarons, JJ.


Law Office of Mark S. Mishler, PC, Albany (Mark S. Mishler of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondents.



MEMORANDUM AND JUDGMENT
McCarthy, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent University at Albany, State University of New York finding petitioner guilty of violating said respondent's student code of conduct.
At approximately 1:00 a.m. on January 30, 2016, petitioner and two other African-American female students at respondent University at Albany, State University of New York (hereinafter SUNY Albany) were involved in an altercation on a public bus traveling from downtown Albany to SUNY Albany's campus. After exiting the bus, petitioner called 911 and reported that she "just got jumped on a bus and no one did anything," that it was a "racial crime" and that people on the bus used racial epithets and slurs against her and her friends. She later provided a similar written statement to police.
This incident was nationally reported as a racially-motivated crime. However, the ensuing investigation called into question petitioner's account of the incident. SUNY Albany charged petitioner with three violations of its student code of conduct (hereinafter the code): [*2]disruptive conduct; threatening or abusive behavior; and forgery, fraud, dishonesty. Following a disciplinary hearing before the Student Conduct Board, at which petitioner did not appear, the Student Conduct Board found her to be in violation of the three charged rules and imposed the sanction of dismissal from SUNY Albany. That determination and penalty were upheld by respondent Laurie Garafola, SUNY Albany's assistant vice-president for student affairs, based on a written recommendation from an Appeal Board. Petitioner commenced this CPLR article 78 proceeding seeking, among other things, to annul that determination.
A college's determination that a student violated its code of conduct will be upheld if supported by substantial evidence in the record (see CPLR 7803 [4]; Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1430 [2017]; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1120 [2013]). As relevant here, the code defines threatening or abusive behavior as "[i]ntentionally or recklessly causing physical harm to any person or reasonable fear of such harm." Significantly, "[s]tudents cannot justify such behavior as defensive if: A. The behavior is a physical response to verbal provocation; B. The student has the ability to leave the situation, but instead chooses to respond physically; C. In circumstances where such actions are punitive or retaliatory." The code defines forgery, fraud, dishonesty as, in pertinent part, the "furnishing [of] false information to any [SUNY Albany], local, state or federal official." Disruptive conduct is defined as "[i]mparing, interfering with or obstructing the orderly conduct, processes and functions of [SUNY Albany] or surrounding community" and "includes, but is not limited to, . . . boisterous or threatening conduct which is unreasonable in the area, time or manner in which it occurs."
Although administrative determinations may be based entirely on hearsay evidence as long as "such evidence is sufficiently relevant and probative or sufficiently reliable and is not otherwise seriously controverted" (Matter of Doctor v New York State Off. of Alcoholism & Substance Abuse Servs., 112 AD3d 1020, 1022 [2013] [internal quotation marks and citations omitted]; see Matter of Haug v State Univ. of N.Y. at Potsdam, 149 AD3d 1200, 1202 [2017]; Matter of Budd v State Univ. of N.Y. at Geneseo, 133 AD3d 1341, 1344 [2015], lv denied 26 NY3d 919 [2016]), the record contains direct evidence against petitioner, as well as hearsay. In support of the charges, the SUNY Albany police investigator who presented the case submitted recordings of 911 calls made by petitioner and one of her friends, written statements made by petitioner and her two friends and videos of surveillance footage from the bus (see People v Hardy, 26 NY3d 245, 250-251 [2015]). When he played the videos during the hearing, the investigator gave a running commentary based on additional information that he and his office had obtained from interviewing more than 30 people who were on the bus at the time of the altercation, viewing additional videos captured on cell phones and listening to a version of the audio from the surveillance footage that had background noise filtered out. Even though those witness interviews and cell phones videos were not admitted into evidence, the Student Conduct Board could rely on the investigator's hearsay testimony to support the direct evidence.
According to the videos, the investigator's commentary and petitioner's written statement, an intoxicated passenger was singing loudly at the back of the bus and, after petitioner's friend objected, tensions escalated. A verbal spat ensued between petitioner and her friends and the fellow passengers. During the verbal confrontation, petitioner's friend was called "ignorant" and petitioner told one passenger not to mess with her. Petitioner, in her written statement, also alleged that racial epithets and slurs were directed against her and her friends. After petitioner's friend was told to "get a job," a physical altercation erupted. Petitioner quickly joined in the fight by climbing over a seat and repeatedly striking a female. Several males [*3]attempted to separate the fighting women, but petitioner continued to engage in the fight. A short while later, petitioner can be seen on the video attacking a male who was using his phone to record the fight. This bystander never fought back against petitioner and, in her statement, petitioner acknowledged hitting this individual. According to the investigator, both the video evidence and witness statements illustrated that no males fought back against or struck petitioner or her friends at any point and petitioner never fell to the ground, as she had alleged. Furthermore, after viewing the surveillance footage, petitioner's friend admitted that petitioner was never held down as also alleged by petitioner. Once the bus stopped and the doors opened, petitioner and her friends — who were closer to the doors than the women they were fighting — could have exited but instead stayed on the bus and continued to fight.
In petitioner's 911 call, she stated that she was the victim of a "racial crime" during which some people directed racial epithets at her and her friends and 10 or 20 "white people," including several males, jumped them. In her written statement, petitioner admitted that she angrily stood up and told one of the passengers not to mess with her, intending to scare the woman into silence for the remainder of the bus ride. Petitioner stated that several males held her down and started hitting her, preventing her from leaving the bus.
The bus surveillance footage, 911 calls and petitioner's statement — on their own — provide substantial evidence to support the three violations. Even if petitioner was provoked by racial epithets and slurs as she claimed, the surveillance videos nonetheless show that petitioner and her friends were involved in a physical altercation and that, at the end, petitioner continued to fight when she could have safely exited the bus. Petitioner also attacked the male bystander who was recording the altercation despite him not fighting back at all. Petitioner admitted trying to scare one of the women. This evidence supported the charge for threatening or abusive behavior. The same evidence showed her disruptive conduct, as did proof that SUNY Albany police and administrative staff spent an exorbitant amount of time dealing with investigating petitioner's allegations of a racial attack. Regarding the rule prohibiting fraud or dishonesty, the video reveals that petitioner was not "jumped" or physically attacked on the bus as she had represented in her statement and 911 call. Additionally, the evidence does not support her allegations to the police that she was held down and beaten by numerous individuals. Although petitioner claims that some of the comments made on the bus were racially motivated, the Student Conduct Board reasonably concluded, based on the record before it, that, other than an assertion from one of her friends who was involved in the incident, there was "no evidence to support [petitioner's] claim that anyone on the bus directed any racial epithets toward her or [her friends]." Thus, substantial evidence supports the determination that petitioner violated the charged provisions of the code.
Petitioner's due process rights were not violated by SUNY Albany's disciplinary hearing procedures. Generally, due process requires that the accused student in a college disciplinary proceeding be given written notice of the charges prior to a hearing, the names of the witnesses against him or her, an opportunity to hear and confront evidence against him or her and to present a defense and to be advised in writing of the factual findings and discipline imposed (see Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016]; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d at 1119; Matter of Mary M. v Clark, 100 AD2d 41, 43-44 [1984]). However, "there is no general constitutional right to discovery in . . . administrative proceedings" (Matter of Miller v Schwartz, 72 NY2d 869, 870 [1988]; see Matter of Jacobson v Blaise, 157 AD3d 1072, 1076 [2018]; Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1431).
Petitioner does not dispute that she received a copy of the student conduct referral, which included a broad statement of the charges and the substance of the evidence upon which they were based. As relevant here, the code requires that parties to a disciplinary hearing present their evidence to the Community Standards Office, a subdivision of Student Affairs, "at least two . . . business days in advance of the scheduled hearing" and that "[t]his evidence will be shared with the opposing party." The code does not contain a requirement that a party provide any documents or information that the party does not intend to submit as evidence at the hearing. It is undisputed that the investigator complied with the code's directive by timely providing to the Community Standards Office the names of his proposed witnesses and the evidence he later presented at the hearing, which were provided to petitioner well in advance of the hearing. Inasmuch as these disclosures adequately permitted petitioner the opportunity to present a defense before the Student Conduct Board, her due process rights were not infringed by SUNY Albany's refusal to require disclosure of the statements of the witnesses to the fight (compare Matter of Jacobson v Blaise, 157 AD3d at 1076). Had petitioner participated in the disciplinary hearing, she could have called her own witnesses to counter the investigator's summary of the witness statements, or she could have questioned him about those hearsay statements.[FN1]
On her administrative appeal, petitioner argued that, after the hearing, she received the witness statements through discovery in her pending criminal matter and that some of those statements were exculpatory. Pursuant to the code, to obtain relief on an administrative appeal based on new evidence, the student must not only show that the evidence was unavailable at the time of the hearing, but must also provide "[a] summary of the new evidence and its potential impact." Petitioner failed to adhere to this requirement, instead submitting only a conclusory opinion that the witness statements contained many pieces of information that could be helpful to her and many that could not. Hence, she was not entitled to reversal on her administrative appeal. Although petitioner now explains that, in her view, some of these witness statements support her assertion that racial epithets and slurs were directed at her and her friends, this would not have changed the result because it was not a defense to petitioner's conduct that she engaged in retaliatory physical fighting in response to verbal provocations (cf. Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 261 [2010], cert denied 562 US 1108 [2010]).
Petitioner's characterization that the investigator improperly offered expert testimony on racial bias is waived and unpreserved because she did not attend the hearing and raise an objection (see Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d 1292, 1294 [2014], lv denied 23 NY3d 908 [2014]; see also Matter of Cowart v Pico, 213 AD2d 853, 855 [1995], lv denied 85 NY2d 812 [1995]). For similar reasons, petitioner failed to preserve her argument [*4]regarding the composition of the Student Conduct Board (see Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d at 1294; see also Matter of Cowart v Pico, 213 AD2d at 855). In any event, petitioner's bias argument is unavailing inasmuch as "hearing officers are presumed to be free from bias" and petitioner offered only conclusory allegations of bias and failed to "provide factual support for . . . her claim" or prove that the Student Conduct Board's determination "flowed from [any] bias" (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1433 [internal quotation marks and citations omitted]; see Matter of Kole v New York State Educ. Dept., 291 AD2d 683, 686 [2002]).
Additionally, a student has no right to counsel in disciplinary proceedings (see Matter of Gruen v Chase, 215 AD2d 481, 481 [1995]; Matter of Mary M. v Clark, 100 AD2d at 44). The code permits a student to have an advisor, but that person may only advise the student and cannot address the Student Conduct Board during the hearing. Petitioner had an attorney who communicated with the Community Standards Office prior to the hearing, raised complaints regarding the procedure and stated that petitioner would not attend if those complaints were not remedied. Petitioner could have attended the hearing with her attorney, who could have advised her, but she did not do so.
Petitioner argues that she was prejudiced by not being informed of who was on the Appeal Board because she is entitled to know who is making adverse decisions. The code designates SUNY Albany's vice-president for student affairs or his designee to render a final determination on appeals. If an Appeal Board is involved, it makes a recommendation that can be accepted, modified or rejected by the vice-president. Here, Garafola acted as the vice-president's designee and attached the Appeal Board decision, which her office had evidently adopted. Thus, petitioner was aware of who made the final determination against her.
Finally, under the circumstances of this case, the penalty of dismissal from SUNY Albany is not disproportionate to the offense (see Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d at 1294).
Egan Jr., Lynch, Devine and Aarons, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1:As noted in the code, one goal of the student disciplinary process is to expediently deal with any alleged misconduct. Though we understand that petitioner was in a difficult position in view of the criminal charges filed by SUNY Albany against her and her two friends related to the situation on the bus, and she may have felt compelled not to testify at the hearing due to the pending criminal proceedings, colleges are not required to delay the student conduct process and may proceed with disciplinary hearings without waiting for the completion of criminal matters (cf. Matter of Mountain [Poersch], 89 AD2d 632, 633 [1982]).