Matter of Jacobson v Blaise (2019 NY Slip Op 06549)





Matter of Jacobson v Blaise


2019 NY Slip Op 06549


Decided on September 12, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 12, 2019

527084

[*1]In the Matter of Matthew Jacobson, Petitioner,
v
Butterfly Blaise, as Title IX Coordinator of the State University of New York at Plattsburgh, et al., Respondents.

Calendar Date: August 21, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


Barry S. Jacobson, New York City, for petitioner.
Letitia James, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.



Clark, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Clinton County) to review a determination of the State University of New York at Plattsburgh finding petitioner guilty of sexual misconduct in violation of its Student Conduct Manual.
In May 2016, respondent Larry Allen — the Director of Student Conduct at the State University of New York at Plattsburgh (hereinafter SUNY) — issued a statement of judicial charges to petitioner, a SUNY student, charging him with having violated the provisions of SUNY's Student Conduct Manual that prohibited students from committing acts of sexual violence and violating a criminal or civil law. The charges were based on allegations that, over a roughly seven-hour period on October 31, 2015, petitioner "initiated sexual intercourse" with a female student (hereinafter the reporting individual) "three different times without establishing affirmative consent." After a hearing, SUNY's Student Conduct Board found petitioner to be "responsible" for both charges and imposed a disciplinary sanction of dismissal. The determination was upheld on administrative appeal. Petitioner thereafter commenced a CPLR article 78 proceeding, which was transferred to this Court. In January 2018, this Court annulled the determination and remitted the matter to SUNY for a new hearing (Matter of Jacobson v Blaise, 157 AD3d 1072 [2018]).
In March 2018, petitioner was again charged with violating the same two provisions of SUNY's Student Conduct Manual based upon his reported initiation of sexual intercourse with the reporting individual three times on October 31, 2015 without affirmative consent. Following a hearing, the Student Conduct Board found petitioner responsible for the charge of sexual violence, but not responsible for the charge of violating a civil or criminal law, and imposed a disciplinary sanction of a three-year suspension from SUNY. Upon administrative appeal, SUNY's Judicial Appeal Board upheld the determination. Petitioner thereafter commenced this CPLR article 78 proceeding to once again challenge the determination. The proceeding was transferred to this Court.[FN1]

Petitioner claims that, as a result of numerous alleged due process violations, he was deprived of a fair hearing. However, our review of the record confirms that petitioner was afforded adequate notice of the allegations and disciplinary charges against him and a meaningful opportunity to be heard at a fair and impartial hearing (see Education Law §§ 6443, 6444 [5] [b], [c] [iii]). Petitioner provides no evidence to support his bare assertion that Allen or any of the individual members of the Student Conduct Board were biased against him (see Matter of Agudio v State Univ. of N.Y., 164 AD3d 986, 991 [2018]; Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1433-1434 [2017]). Contrary to petitioner's contention, Allen's participation in the hearing after having participated in the prior administrative proceeding does not establish bias or otherwise violate principles of due process (see Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1434). Moreover, "an appearance of impropriety," even if there were one, "is insufficient to set aside an administrative determination" (id. at 1433 [internal quotation marks and citations omitted]).

Petitioner also challenges SUNY's determination that he violated the Student Conduct Manual's prohibition against sexual violence. Under the Student Conduct Manual, as published at the time of the underlying incidents, "sexual violence" is defined as "[p]hysical sexual acts perpetrated against a person's will or perpetrated where a person is incapable of giving consent" and includes such acts as "rape, sexual assault, sexual assault with an object, sodomy, fondling, incest, and statutory rape." Education Law § 6441 (1), which was enacted shortly before the underlying incidents (see L 2015, ch 76, § 1), sets forth a definition of affirmative consent that all educational institutions are required to adopt. Specifically, affirmative consent is defined as "a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent" (Education Law § 6441 [1]). The Student Conduct Manual additionally states that "[c]onsent cannot be given when a person is incapacitated" and that "[i]ncapacitation occurs when an individual lacks the capacity to fully, knowingly choose to decide about participating in sexual activity, whether due to a disability that limits informed sexual decision-making, or because of impairment due to drugs or alcohol . . ., the lack of consciousness or being asleep." The Student Conduct Manual further provides that "[c]onsent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act." In reviewing SUNY's disciplinary determination, made after a hearing, we are limited to assessing whether the determination is supported by substantial evidence (see CPLR 7803 [4]; Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018]; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016]).

SUNY's determination was based upon its finding that the reporting individual could not affirmatively consent to sexual activity with petitioner because she was asleep or unconscious and, therefore, "incapacitated during the time period in question." In that respect, the reporting individual stated that, over a roughly four-hour period, she had consumed three or four 24-ounce cans of malt liquor, as well as an unknown quantity of alcohol from a friend's drink. Statements made by petitioner, both at the hearing and during an interview conducted by respondent Butterfly Blaise, SUNY's Title IX Coordinator, as reflected in a written summary of that interview, corroborated the reporting individual's account that she had been drinking prior to and during her encounter with petitioner. In fact, as reflected in the interview summary, petitioner recalled observing the reporting individual stumbling in the hallway and mumbling her words. Additionally, the reporting individual asserted that she had significant gaps in her memory regarding her encounter with petitioner, stating that she remembered certain parts but that "other parts fe[lt] 'black'." Specifically, she recalled letting petitioner into her building, but could not recall how they ended up in her room or how or when the first and second incidents of sexual intercourse began. She stated that, "[a]t times[,] I think I must have been sleeping or blacked out a bit. Though, I . . . do not think I blacked out from alcohol[, but] from pain if that is possible." In our view, this and other evidence in the record supported SUNY's finding that the reporting individual was incapacitated — and, therefore, unable to give affirmative consent — during at least one of the three instances of sexual intercourse.

SUNY further found that, even if she were not incapacitated during the period in question, the reporting individual never affirmatively consented to sexual intercourse with petitioner. In that regard, the reporting individual stated that she recalled telling petitioner that she "just wanted to cuddle" and having a conversation with petitioner about her not being the "type of girl" to "sleep around." The reporting individual further attested to several actions that she believed expressed her unwillingness to engage in sexual activity with petitioner, including her vocalization that she was in pain. SUNY flatly rejected petitioner's assertions that the reporting individual had numerous opportunities to put an end to the sexual contact, emphasizing that silence or a lack of resistance does not demonstrate consent to sexual activity (see Education Law § 6441 [1]). Overall, SUNY found the reporting individual to be more credible than petitioner and, to the extent that petitioner presented conflicting evidence on the issue of affirmative consent, the resolution of any such issue was within the exclusive province of SUNY (see Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d at 1046; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d at 1145-1146; Matter of Lampert v State Univ. of N.Y. at Albany, 116 AD3d 1292, 1294 [2014], lv denied 23 NY3d 908 [2014]). Accordingly, in view of the foregoing, we find that substantial evidence exists to support SUNY's determination that petitioner violated the Student Conduct Manual's prohibition against sexual violence (see Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d at 1045-1046; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d at 1146).

Petitioner further argues, without citation to any legal support, that Education Law article 129-B, commonly known as New York's Enough is Enough Law (see L 2015, ch 76, § 1), is unconstitutionally vague on its face and as applied to him. With respect to his facial challenge, we find that Education Law article 129-B contains sufficiently clear standards so as to afford a student of ordinary intelligence fair notice of the meaning of its provisions and to whom it applies and, further, that the provisions are sufficiently clear to prevent its arbitrary enforcement (see Foss v City of Rochester, 65 NY2d 247, 253 [1985]; Matter of Griffiss Local Dev. Corp. v State of N.Y. Auth. Budget Off., 85 AD3d 1402, 1403 [2011], lv denied 17 NY3d 714 [2011]). Petitioner wholly fails to identify how the challenged statute is unconstitutionally vague as applied to him.

Furthermore, to the extent that petitioner challenges the sanction imposed upon him, we do not find a three-year suspension to be so disproportionate to the offense as to be shocking to one's sense of fairness (see Matter of Haug v State Univ. of N.Y. at Potsdam, 166 AD3d 1404, 1405 [2018]; Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1430). Thus, we decline to modify the sanction. Finally, any arguments not specifically addressed herein have been reviewed and found to be without merit.

Garry, P.J., Egan Jr., Mulvey and Pritzker, JJ., concur.



ADJUDGED that the determination is confirmed, without costs, and petition dismissed.









Footnotes

Footnote 1: With two Justices dissenting, this Court denied petitioner's motion for a stay pending determination of this proceeding (2018 NY Slip Op 81537[U]).