Matter of Alexander M. v Cleary (2022 NY Slip Op 03030)

Matter of Alexander M. v Cleary

2022 NY Slip Op 03030

Decided on May 5, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 5, 2022

528959B
[*1]In the Matter of Alexander M., Petitioner,
v
Chantelle Cleary, as Former Title IX Coordinator at the State University of New York at Albany, et al., Respondents.

Calendar Date:March 25, 2022

Before:Garry, P.J., Lynch, Aarons, Colangelo and Ceresia, JJ.

Nesenoff & Miltenberg, LLP, New York City (Andrew T. Miltenberg of counsel), for petitioner.
Letitia James, Attorney General, Buffalo (Joel J. Terragnoli of counsel), for respondents.

Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State University of New York at Albany finding petitioner in violation of said respondent's code of conduct.
When this proceeding was previously before us, we withheld decision and remitted the matter to Supreme Court for discovery on the issue of whether respondent Chantelle Cleary — the former Title IX coordinator at respondent State University of New York at Albany (hereinafter UAlbany) — was biased against petitioner when investigating allegations that he violated UAlbany's official code of conduct (hereinafter the student code) (188 AD3d 1471, 1477 [2020]).[FN1] Discovery on the issue is now complete and, upon return to this Court following remittal, the parties have submitted the full audio recordings of witness interviews and an unredacted version of the investigation referral report, together with exhibits. Accordingly, petitioner's claims may now be addressed.
The underlying facts are more fully set forth in our prior decision. Petitioner contends that UAlbany's determination finding him in violation of the student code as it pertains to three sexual misconduct charges is not supported by substantial evidence. We disagree. "In 2015, New York enacted article 129-B of the Education Law, known as the Enough is Enough Law (see L 2015, ch 76)[,] . . . to require all colleges and universities in the State of New York . . . to implement uniform prevention and response policies and procedures relating to sexual assault" (Matter of Jacobson v Blaise, 157 AD3d 1072, 1074 [2018] [internal quotation marks and citation omitted]). "In reviewing [UAlbany]'s disciplinary determination, made after a hearing [and pursuant to these requirements], we are limited to assessing whether the determination is supported by substantial evidence" (Matter of Jacobson v Blaise, 175 AD3d 1629, 1631 [2019] [citation omitted], lv denied 35 NY3d 901 [2020], cert denied ___ US ___, 141 S Ct 258 [2020]; see Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1430 [2017]). Substantial evidence "is a minimal standard [that] . . . demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018] [internal quotation marks and citations omitted]). "Where substantial evidence exists to support a decision being reviewed by the courts, the determination must be sustained, irrespective of whether a similar quantum of evidence is available to support other varying conclusions" (id. [internal quotation marks and citations omitted]).
The charges against petitioner include allegations that, on a Friday night in September 2017, he engaged in sexual conduct with the reporting individual without her consent, amounting to sexual assault I and sexual assault II under the student code, and that [*2]his actions also constituted sexual harassment. Under the student code, sexual assault I means, as relevant here, "sexual intercourse or any sexual penetration, however slight, of another person's oral, anal, or genital opening with any object (an object includes but is not limited to parts of a person's body) without the active consent of the victim." Sexual assault II occurs by "touching a person's intimate parts . . . without the active consent of the victim." Sexual harassment is defined, in pertinent part, as "[u]nwelcome verbal or physical conduct of a sexual nature that . . . creates an intimidating, hostile or sexually offensive environment for learning, working or living on campus."
Under both the Enough is Enough Law and the student code, affirmative consent constitutes "a knowing, voluntary, and mutual decision among all participants to engage in sexual activity . . . [that] can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent" (Education Law § 6441 [1]). The student code further provides that "[c]onsent cannot be given when a person is incapacitated, and a reasonable person knows or should have known that such person is incapacitated. Incapacitation occurs when an individual lacks the ability to knowingly choose to participate in sexual activity [and, d]epending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent" (see Education Law § 6441 [2] [d]).
In rendering its determination, UAlbany's Student Conduct Board (hereinafter the Board) had before it a redacted version of the student conduct referral detailing the charges against petitioner, the Title IX investigation report and the parties' hearing testimony. The reporting individual recounted that, on the evening in question, she was preparing to go to an off-campus fraternity party with petitioner, who arrived at her room with Xanax and gave some to her roommate and her friend. The reporting individual estimated that she consumed "one fourth" of a bottle of beer prior to leaving and accepted a Xanax from petitioner while in an Uber on the way to the party. She may have also accepted a second Xanax from petitioner, but could not recall with clarity.
The reporting individual remembered consuming alcoholic "juice" at the party, but her memory of the rest of the night is foggy. Her next coherent memory is of waking up the next morning naked in petitioner's bed, who told her that they had engaged in oral sex and sexual touching. To the extent that she did not appear upset at that time, the reporting individual told investigators that she believed the Xanax likely continued to have a calming effect. Thereafter, the reporting individual became concerned about reports that she had sex at the fraternity [*3]party on Friday night. At her friend's suggestion, she went to the hospital and spoke to police, but she could not remember what she told them. The reporting individual also could not remember or explain her text messages to petitioner on Saturday morning in which she told him, "Last night was amazing. We should do that again. . . . Sorry to freak you out this morning. I just don't remember anything that happened." At the hearing, the reporting individual stated that she "kn[ew]" she did not provide affirmative consent to the sexual conduct because she had "no recollection of having [the] activity that took place."
Petitioner's version of the Friday night events differs in certain important respects. He told the investigators that the reporting individual acted romantically towards him at the party and stated to the Board that, although he had observed her with a cup of alcohol, he believed her to be "sober or at least very close to sober." According to petitioner, he and the reporting individual returned to his room after the party because she insisted on staying in his dorm. Petitioner stated that the reporting individual got into his bed, indicated that she wanted to have sex with him, voluntarily took off her clothes and said "yes" when he asked if she wanted to have oral sex, which she then performed on him. According to petitioner, when he touched the reporting individual's vagina, "she reacted in a way that indicated she was enjoying [it]." Petitioner maintained that the reporting individual never said "no" during their encounter and did not indicate a lack of consent. Although petitioner acknowledged that he had to tell the reporting individual about their sexual activity the next morning because she did not remember what had occurred, he did not observe her to be upset.
The witness statements contained in the investigation report corroborate the reporting individual's contention that she was intoxicated prior to the encounter. Although two witnesses stated that the reporting individual was not falling over and seemed "fine" when they saw her at the party — and others confirmed that they saw her being physically intimate with petitioner — the majority observed her to be in a highly intoxicated state, describing her as off balance and slurring her words. To that end, a witness recalled that she was "just stumbling around . . . stupidly drunk," while others described her as "definitely . . . not sober" and "very zombielike." Two witnesses confirmed that petitioner had distributed Xanax to them prior to the party, and one witness also recalled hearing petitioner ask the reporting individual if she wanted to do "more Xans" when they were leaving the party. One witness stated that he spoke to the reporting individual for "[10] or [15] minutes" prior to when she entered petitioner's room that night and recalled that she seemed "off." Moreover, petitioner's roommate was present in the bedroom when petitioner and the reporting [*4]individual returned from the party and described them as appearing "out of it" and "clumsy." The roommate left the room when he heard "sexual noises."
On this record, we find that substantial evidence supports the Board's determination as to the sexual misconduct charges. There is no dispute that petitioner and the reporting individual engaged in intimate touching and oral sex on the night in question. The discrepancies in the parties' account regarding the reporting individual's capacity to consent amounted to an issue of credibility for the Board to resolve (see Matter of Jacobson v Blaise, 175 AD3d at 1632; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [2016]). Given the evidence from multiple sources that the reporting individual used drugs and alcohol on the night in question and appeared highly intoxicated shortly before the encounter, substantial evidence supports the Board's determination that petitioner engaged in sexual activity with the reporting individual when she was incapable of consent by virtue of intoxication and that a reasonable person in his position should have known of her incapacitation (see Education Law § 6441 [1], [2] [d]; Matter of Jacobson v Blaise, 175 AD3d at 1633). Accordingly, the Board's determination regarding the sexual assault charges will not be disturbed. The foregoing evidence also supports a finding that petitioner committed sexual harassment as defined in the student code.
We are not persuaded by petitioner's contention that he was deprived of a fair hearing. In accordance with the requirements of the Enough is Enough Law (see Education Law article 129-B; L 2015, ch 76, § 1), UAlbany's student code provides that, "in [c]ases involving sexual misconduct," the accused and the reporting individual will be given "[t]he same opportunity to be accompanied by an advisor of their choice who may assist and advise the parties throughout the conduct process and any related hearings or meetings" (see Education Law § 6444 [5] [c] [i]). The student code affords the parties the right to "call witnesses who have direct knowledge of the incident" and "an investigation and process conducted in a manner that recognizes the legal and policy requirements of due process (including fairness, impartiality, and a meaningful opportunity to be heard)," including "[t]he right to present evidence and testimony at a hearing, where appropriate" (see Education Law § 6444 [5] [c] [iii]).
Nevertheless, "there is a limited right to cross-examine an adverse witness in an administrative proceeding, and the right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings" (Matter of Jacobson v Blaise, 157 AD3d at 1076 [internal quotation marks, brackets and citations omitted]). "It is well established that once having adopted rules or guidelines establishing the procedures to be followed in relation to suspension or expulsion [*5]of a student, colleges or universities — both public and private — must substantially comply with those rules and guidelines" (Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1118 [2013] [internal quotation marks and citations omitted]; see Tedeschi v Wagner Coll., 49 NY2d 652, 660 [1980]).
Upon our review of the record, we are satisfied that the Board substantially complied with its hearing procedures and afforded petitioner the minimum requirements of due process. As required under the student code, petitioner was able to bring an advisor of his choice to the hearing and the record does not reflect that the reporting individual was treated more favorably in that respect (see Education Law § 6444 [5] [c] [i]). Although petitioner maintains that his mother should have also been permitted to attend the hearing, the student code expressly provides, in bold text, that the parties may have only one advisor present. Throughout the hearing, petitioner was permitted to question Cleary and the reporting individual by proposing questions to the Board. Although the Board rejected certain of petitioner's questions, it did so only when it deemed them irrelevant or duplicative of those answered in the investigation report (see Matter of Doe v Cornell Univ., 163 AD3d 1243, 1245 [2018]; Matter of Jacobson v Blaise, 157 AD3d at 1076-1078).
We are mindful that the Board's decision at the outset of the hearing to preclude nonparty witness testimony seemingly runs counter to the general right of a party to call witnesses with "direct knowledge of the incident." In doing so, however, the Board reasoned that petitioner and the reporting individual already had the opportunity during the investigatory process to identify and question witnesses, and that it would review the "witness statements and answers to questions" included in the report. Notwithstanding petitioner's objection to this limitation, he failed to identify at the hearing which witnesses he would have called or what testimony he expected to elicit, and merely stated that his purpose in calling the witnesses was to allow the Board to better assess their credibility. Notably, as detailed previously, none of the witnesses observed the actual incident, but the majority did consistently state during the investigation that the reporting individual appeared intoxicated in the hours leading up to it. In our view, the Board's limitation of witness testimony under these circumstances did not deprive petitioner of a fair hearing (see Matter of Brucato v State Univ. of N.Y. at Buffalo, 175 AD3d 977, 979 [2019]; Matter of Doe v Skidmore College, 152 AD3d 933, 934 [2017]; Matter of Budd v State Univ. of N.Y. at Geneseo, 133 AD3d 1341, 1343-1344 [2015], lv denied 26 NY3d 919 [2016]).
Nor does the record support petitioner's claim of bias on Cleary's part depriving him of an impartial investigation (see Education Law § 6444 [5] [c] [iii]). "It is beyond dispute that an impartial decision[*6][-]maker is a core guarantee of due process, fully applicable to adjudicatory proceedings before administrative agencies" (Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158, 161 [1990] [citations omitted]). UAlbany's student code codifies that right by affording students charged with misconduct the right to an impartial investigation (see Education Law § 6444 [5] [c] [iii]). That said, "an appearance of impropriety is insufficient to set aside an administrative determination; the petitioner must provide factual support for his or her claim of bias and prove that the outcome flowed from that bias" (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1433 [internal quotation marks and citations omitted]).
After reviewing the full audio recordings of witness interviews and an unredacted version of the investigation referral report — which were submitted during discovery on remittal — we conclude that the report was a fair portrayal of the underlying information and the outcome did not flow from any bias against petitioner. Although the report did not include statements that petitioner made to the investigators during his investigation interview, the report did include his written statement, which expressly discussed the event in question and his arguments regarding the reporting individual's sexual orientation. It is also worth noting that petitioner was provided with a copy of the referral report in advance of the hearing and made no request to supplement it. Moreover, petitioner made opening and closing statements and testified at the hearing.
Petitioner does accurately point out that certain comments made by a few witnesses were not included in the report. To illustrate, the report did omit statements from certain witnesses describing the reporting individual as "fine" and "normal" during portions of the evening in question. The audio recordings, however, indicate that these statements were in reference to observations made either earlier in the evening or based upon brief interactions with the reporting individual. With respect to statements made by several witnesses that the reporting individual was stumbling, the omission of a statement from a witness that the floor at the party was uneven was of limited probative value given that this same witness stated that the reporting individual was "obviously very drunk." Contrary to petitioner's assertions, specific information bearing on the mental state of certain witnesses was included in the report, which also stated that "[n]one of the witnesses explicitly stated that they were sober on the night [in question]." Petitioner's further contention that the report failed to adequately describe the intoxicated state of witness No. 1 is of no moment for the report included his own admission that he "was also really drunk." The point made is that the report included relevant information to allow the Board to gauge the credibility of the witnesses. Considered [*7]in context, we conclude that the excluded comments were of limited evidentiary value and the inclusion of them in the report would not have affected the ultimate outcome.
We are not persuaded by petitioner's contention that Cleary's rephrasing of the conduct underlying the sexual assault I charge evidenced bias on her part. As noted in our earlier decision, the initial investigation notice premised this charge on the parties having engaged in oral sexual conduct (188 AD3d at 1475-1476). In the referral report, Cleary rephrased the charge to allege that petitioner affirmatively penetrated the reporting individual, a characterization inconsistent with his narrative explaining that he was a passive participant. During the hearing, petitioner directly asked Cleary to explain why she changed the language. We disagree with Cleary's initial response that the change was "really just a more descriptive way to say the exact same thing." That said, Cleary elaborated that she was in no way saying that petitioner utilized force and her intent was to state that petitioner and the reporting individual had engaged in oral sex. Cleary explained that the report reflected the allegation that petitioner engaged in oral sex with the reporting individual, who lacked the capacity to consent at the time. She acknowledged that it was not her role, but the role of the Board, to determine whether the evidence supported a finding of sexual misconduct. Although the foregoing indicates some misjudgment on Cleary's part, the claim of bias is not convincing, and we are satisfied that the Board made its own findings as to the nature of the encounter.
Petitioner's assertion that Cleary used an intimidating tone with him during her investigatory questioning was supported by an affidavit from his advisor and was, at times, reflected in the audio recording of his interview. During the hearing, Cleary was given an opportunity to respond to the advisor's statement in this regard, but inexplicably declined to do so. In these investigations, the parties are entitled to be treated fairly and every effort must be made to treat them in a professional manner. However unfortunate Cleary's tone with petitioner may have been at times during the investigation, we are satisfied that the Board's determination did not flow from any bias or impropriety on the part of Cleary, who was one of four investigators on the case, conducted less than half of the witness interviews and openly explained to the Board that it was the ultimate finder of fact (see Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1433; Matter of Sunnen v Administrative Rev. Bd. for Professional Med. Conduct, 244 AD2d 790, 791 [1997], lv denied 92 NY2d 802 [1998]). After reviewing the submissions proffered on remittal, we are satisfied that petitioner was provided with an impartial investigation, the report submitted to the Board was a fair representation of the relevant information and the Board [*8]made a determination supported by substantial evidence.
Lastly, petitioner contends that the sanction of dismissal was excessive. Under the student code, where a student is "found responsible for sexual assault, the available sanctions are suspension with additional requirements and expulsion/dismissal." In light of the severity of petitioner's sexual misconduct and the three unchallenged violations related to his distribution of Xanax to the reporting individual and two other UAlbany students, the sanction of dismissal is not "so disproportionate to the offense as to be shocking to one's sense of fairness" (Matter of Jacobson v Blaise, 175 AD3d at 1633; see Matter of J.B. v State Univ. of N.Y., 175 AD3d 493, 495 [2019]; Matter of Haug v State Univ. of N.Y. at Potsdam, 166 AD3d 1404, 1405 [2018]).
Petitioner's remaining contentions, to the extent not specifically addressed, have been considered and found lacking in merit.
Garry, P.J., Aarons, Colangelo and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: We dismissed petitioner's appeal from the nonfinal Supreme Court order denying his motion for discovery on the issue of bias (see CPLR 5701 [b] [1]), but addressed the propriety of that determination within the context of the transferred proceeding (188 AD3d at 1473-1474).