Matter of Doe v State Univ. of N.Y. Coll. at Cortland (2024 NY Slip Op 01965)

Matter of Doe v State Univ. of N.Y. Coll. at Cortland

2024 NY Slip Op 01965

Decided on April 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 11, 2024

CV-23-0480
[*1]In the Matter of John Doe, Petitioner,
v
State University of New York College at Cortland, Respondent.

Calendar Date:February 20, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Pattison, Sampson, Ginsberg & Griffin, PLLC, Troy (Rhiannon I. Gifford of counsel), for petitioner.
Letitia James, Attorney General, Albany (Douglas E. Wagner of counsel), for respondent.

Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Cortland County) to review a determination of respondent finding petitioner guilty of sexual misconduct in violation of respondent's code of conduct.
In February 2022, petitioner, a student at respondent, engaged in sexual conduct with a female student (hereinafter the reporting individual). Thereafter, the reporting individual filed a formal complaint with respondent's Title IX office (see 34 CFR 106.2) alleging that some of the sexual conduct was not consensual. Respondent's Title IX coordinator sent petitioner a notice informing him that an investigation was being conducted in relation to the complaint. After the investigation, it was determined that the evidence presented was sufficient to warrant a formal hearing. Respondent issued a charge letter to petitioner in which he was charged with three violations of respondent's Code of Student Conduct (hereinafter the student code) which prohibits sexual assault— namely, one charge of nonconsensual sexual penetration (hereinafter charge 1) and two charges of nonconsensual sexual touching — one based upon petitioner allegedly slapping the reporting individual's buttocks (hereinafter charge 2), and the second based upon petitioner allegedly rubbing his penis on her body (hereinafter charge 3). After the hearing, the Title IX Hearing Officer found petitioner to be in violation of the student code on all three charges and determined that disciplinary dismissal was appropriate based on the nature of the offense. The Hearing Officer's decision was upheld by respondent's Title IX Appeals Committee on administrative appeal. Petitioner thereafter commenced this CPLR article 78 proceeding and the matter was transferred to this Court (see CPLR 7804 [g]).
Petitioner contends that the determination should be annulled because it is not supported by substantial evidence.[FN1] "The determination that [the] petitioner committed the violations will be upheld if they are supported by substantial evidence in the record" (Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d 1429, 1430 [3d Dept 2017] [citations omitted]). "Substantial evidence is a minimal standard that demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Alexander M. v Cleary, 205 AD3d 1073, 1075 [3d Dept 2022] [internal quotations marks, brackets, ellipsis and citations omitted]). "Where substantial evidence exists, [this Court] may not substitute its judgment for that of [respondent's hearing officer], even if [this Court] would have decided the matter differently" (Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1046 [2018] [citations omitted]). The student code defines "[s]exual assault" as "a physical sexual act or acts committed against another person without consent." The student code, as well as the Enough is Enough Law (see L 2015, ch 76), defines affirmative consent as "a [*2]knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent" (see also Education Law § 6441 [1]). Further, the student code states that not only may "consent . . . be initially given but withdrawn at any time" but also that "[c]onsent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act" (see also Education Law § 6441 [2] [a], [c]).
Both petitioner and the reporting individual testified that, on the night of the incident, they consensually engaged in certain sexual acts until petitioner stopped because the reporting individual told petitioner that she no longer wanted to engage in sexual intercourse due to pain. At this point, petitioner's and the reporting individual's testimony diverged. According to the reporting individual's testimony, petitioner continued to ask about having sexual intercourse, to which she responded by saying, "no, seriously, like we're done." With regard to charge 1, the reporting individual testified that, subsequently, while petitioner was kneeling between her legs attempting to persuade her to engage in sexual intercourse again, he reentered his penis into her vagina despite her having verbally told him that she did not want to have sexual intercourse. With regard to charge 2, the reporting individual testified that, while engaging in consensual intercourse, petitioner slapped her buttocks. She testified that she told him not to do this because she did not want his roommates to hear but petitioner proceeded to do it "multiple more times" after she told him to stop. Further, the reporting individual testified that when petitioner dropped her off back at her dorm, he once again slapped her buttocks. With regard to charge 3, the reporting individual testified that after saying that she no longer wanted to have sexual intercourse, she and petitioner were kissing when he rubbed his penis on the reporting individual's body. The reporting individual testified that she did not like that he was doing this, so she sucked her stomach in to try and stop the sexual contact. Three witnesses testified on the reporting individual's behalf, corroborating her testimony as she relayed to them, shortly after the incident, what had occurred.
For his part, petitioner testified that after the reporting individual withdrew her consent, they did not engage in sexual intercourse again and he denied any penetration thereafter. He did, however, claim that the reporting individual asked him to perform oral sex on her. Petitioner denied all contact with the reporting individual's buttocks, including during intercourse and later when he walked her back to her dorm. Petitioner also denied charge 3 on [*3]the basis that he was lying on his back while the reporting individual was lying on her side. Petitioner testified that the reporting individual grabbed his penis and manually stimulated it on her own. Petitioner was also asked about messages between the reporting individual and himself the day after the incident, which the reporting individual brought to the hearing. The reporting individual took a photo of these messages immediately after receiving them and then, when she looked at them later, she noticed that petitioner had deleted some of the messages. Specifically, it was found that petitioner deleted messages that stated, "I'm sorry, I was smacked and [it] didn't process with me. I'm really sorry, I feel really bad." When the reporting individual replied, "yeah that's really not okay so that's why I unadded [you]," petitioner responded and subsequently deleted, "[y]ea I know that's not ok[ay] and I'm sorry[.] And I'm ok[ay] with if you don't wan[t to] do stuff again but I still wan[t to] be friends. I[']m not normally like that ever, I was just high and the way we were talking earl[ier] just got to me. I[']m truly sorry." When petitioner was asked why he selectively deleted messages from the conversation, rather than the whole conversation, he testified that he got distracted and meant to delete the entire conversation. Petitioner also claimed that he was deleting the messages from oldest to newest, but the photographs of the messages contradicted that testimony. Petitioner presented two witnesses, although one did not appear at the hearing. The witness who did appear testified to seeing the reporting individual enter petitioner's suite and saw them when they left at the end of the night. This witness testified that he was not told anything by petitioner about the night in question, but after the allegations were brought against petitioner, he told the witness that "he had thought [the night] went well" and that he did not slap the reporting individual's buttocks.
The Hearing Officer was tasked with resolving the conflicting narratives of the reporting individual and petitioner. To that end, the Hearing Officer found the reporting individual and two of her witnesses credible.[FN2] The Hearing Officer also found that the reporting individual's willingness to share information that portrayed petitioner in a positive light, including when she testified that petitioner stopped engaging in sexual intercourse when she initially asked him to, further established her credibility. Conversely, the Hearing Officer determined that petitioner's "selective deleting of messages" indicated "a desire to remove information or messages that may have portrayed [him] in a negative light." Moreover, in the deleted messages petitioner acknowledged inappropriate behavior, which was in contrast to his testimony at the hearing that "everything seemed good following the incident." The Hearing Officer also determined that petitioner lacked credibility given his differing [*4]testimony about his sobriety. Despite petitioner's urging, this Court "will not disturb a finding based on a credibility issue within the sole province of [the Hearing Officer] to determine (Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146 [3d Dept 2016] [internal quotation marks, brackets, ellipsis and citation omitted]; see Matter of Neelman v State Univ. of N.Y. at Buffalo, 192 AD3d 1621, 1623 [4th Dept 2021]). Thus, given the reporting individual's testimony as to the night of the incident, we find that there is substantial evidence supporting the determination that petitioner violated the student code as to all three charges (see Matter of Weber v State Univ. of N.Y., Coll. at Cortland, 150 AD3d at 1430; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1120 [3d Dept 2013]).
We turn now to petitioner's claimed procedural errors. Petitioner's contention that respondent's failure to identify the specific code of conduct provisions in the notice of complaint violated his due process rights and the procedural mandates of Education Law § 6444 (5) (b) is unpreserved due to his failure to raise this issue at the hearing (see Matter of Haug v State Univ. of N.Y. at Potsdam, 166 AD3d 1404, 1405 [3d Dept 2018]; Matter of Lampert v State University of New York at Albany, 116 AD3d 1292, 1294 [3d Dept 2014], lv denied 23 NY3d 908 [2014]). Petitioner's assertion that respondent failed to provide his testifying witness with an accurate time for when he was expected to give his testimony is also unpreserved as petitioner failed to seek an adjournment at the hearing (see generally Matter of Loper v McGinnis, 295 AD2d 777, 778 [3d Dept 2002]; Matter of Bish v Goord, 246 AD2d 692, 693 [3d Dept 1998]). We are unpersuaded by petitioner's argument that the Hearing Officer failed to adequately identify the factual basis for the findings and failed to provide conclusions regarding the application of respondent's policy to the identified facts in violation of lawful procedure. The Hearing Officer's report provided a concise statement of petitioner's violations as well as the evidence underlying those violations (see Matter of Ferraro v State Univ. of N.Y. at Purchase Coll., 162 AD3d 766, 767 [2d Dept 2018]; Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d at 1146-1147; compare Matter of Boyd v State Univ. of N.Y. at Cortland, 110 AD3d 1174, 1175-1176 [3d Dept 2013]). Finally, petitioner's challenge to the sanction of expulsion is without merit as we do not find it to be "so disproportionate to the offense as to be shocking to one's sense of fairness" (Matter of Jacobson v Blaise, 175 AD3d 1629, 1633 [3d Dept 2019] [citations omitted], lv denied 35 NY3d 901 [2020], cert denied ___ US ___, 141 S Ct 258 [2020]; accord Matter of Alexander M. v Cleary, 205 AD3d at 1082; see Matter of Haug v State Univ. of N.Y. at Potsdam, 166 AD3d at 1405). As such, we decline to modify the sanction. Finally, any arguments [*5]that have not been specifically addressed herein have been reviewed and found to be lacking in merit.
Garry, P.J., Egan Jr., Clark and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner's contention that respondent has a reputation of punishing petitioners for similar offenses at a rate much higher than other State University of New York schools is improperly raised for the first time on appeal (see generally Sharma v State University of New York at Buffalo, 170 AD3d 1565, 1567 [4th Dept 2019]).

Footnote 2: The third of the reporting individual's witnesses appeared to be biased given the nature and tone of her testimony, which the Hearing Officer found reduced her "objective credibility, though the information was still consistent with the other information that was provided."